IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CLEARLINE TECHNOLOGIES LTD. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No.4:11-cv-1420 |
| v. | § | |
| | § | JURY DEMANDED |
| COOPER B-LINE, INC. | § | |
| COOPER INDUSTRIES PLC. and | § | |
| COOPER TECHNOLOGIES | § | |
| COMPANY, | § | |
| | § | |
| *Defendants.* | | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Clearline Technologies Ltd. ("Clearline") brings this action against Defendants Cooper B-Line, Inc. ("Cooper B-Line"), Cooper Technologies Company ("Cooper Technologies"), and Cooper Industries PLC ("Cooper Industries") (collectively "Defendants") and alleges as follows:

### I. PARTIES

1.     Clearline is a Canadian limited company with a principal place of business at 1149 St. Matthews, Winnipeg, MB Canada R3G 0J8.

2.     Upon information and belief, Cooper B-Line is incorporated under the laws of Delaware, with a principal place of business at 509 West Monroe Street, Highland, Illinois 62249.

3.     Upon information and belief, Cooper Technologies is incorporated under the laws of Delaware with a principal place of business at 600 Travis Street, Suite 5600, Houston, Texas 77002.

---

4.      Upon information and belief, Cooper Industries is incorporated under the laws of Ireland with a principal place of business at 600 Travis Street, Suite 5600, Houston, Texas 77002.   In addition, upon information and belief, Cooper Industries' administrative headquarters is located at 600 Travis Street, Suite 5600, Houston, Texas 77002.

5.      Upon information and belief, Cooper Industries indirectly owns and controls Cooper B-Line and Cooper Technologies.

## II. JURISDICTION AND VENUE

6.      This action arises under the trademark laws of the United States, Title 15 of the United Stated Code.   The Court's jurisdiction over this action is proper under the above statutes, including 15 U.S.C. §1114, 1121, 1126, and 1125, *et seq.*, and 28 U.S.C. §1331 and §1338(a).   This Court has supplemental jurisdiction over the related state law claims asserted pursuant to 28 U.S.C. §1367.   The Court further has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity between Clearline and Defendants and the amount in controversy exceeds $75,000.

7.      Personal jurisdiction exists generally over Defendants. Defendants Cooper Technologies' and Cooper Industries' primary place of business is located in the State of Texas.   Cooper Industries maintains systematic and continuous contacts within the State of Texas and within this judicial District by, *inter alia*, employing a staff at its offices in Houston through which its worldwide operations are orchestrated.   Defendant Cooper B-Line has conducted and continues to conduct business within the State of Texas.   Venue is proper in this Court under 28 U.S.C. §§1391.

## III. FACTS

8.     Clearline was formed on January 29, 2003 in Winnipeg, Manitoba, Canada, by Neil Krovats and Jim Krovats.

9.     On April 9, 2003, Clearline entered into a Proprietary Information Agreement with Cooper B-Line under which Clearline and Cooper B-Line would evaluate and negotiate the prospect of Clearline supplying strut supports, bridge supports, and other related rooftop support products to Cooper B-Line. Clearline and Cooper B-Line also reached a verbal agreement that Cooper B-Line would exclusively sell Clearline's products within the United States.

10.     On November 7, 2005, Clearline filed an application to register its C-PORT® trademark with the United State Patent and Trademark Office ("USPTO") for use in connection with the sale of its rooftop support products.  Clearline's C-PORT® mark was registered on the USPTO's principal register on April 17, 2007.

11.     In December 2005, Clearline made the first sale of its C-PORT® products to Cooper B-Line for distribution in the United States.  In 2006 and 2007, over 70% of Clearline's sales of its C-PORT® products were to Cooper B-Line.

12.     Clearline has also acquired trademark rights in the trade dress of the inherently distinctive C-PORT® products, in particular, their non-functional shape, dimensions, color, and yellow striping, which have developed a secondary meaning and are recognizable throughout the industry.  The public associates the trade dress with Clearline's C-PORT® products.

13.     On or about July 2007, Dave Rice and Chris Peeler of Cooper B-Line represented to Neil Krovats that Cooper B-Line wished to enter into a contract to distribute 700,000 units of C-PORT products over the next year, but that Clearline would need to increase its capacity in order for that to occur. Based on that request, Clearline

increased its capacity by moving to a new, 25,000 square foot facility, signing a five-year lease, entering into a contract to purchase $700,000 of equipment, and spending $10,000 in legal fees to prepare a new contract for Cooper B-Line. After spending such a large amount of money in reliance on Cooper B-Line's statements, Clearline learned that Cooper B-Line had no intention of continuing to distribute the C-PORT® products and knowingly induced Clearline to expend resources to Clearline's financial disadvantage.

14.     Without warning, in April 2008, Dave Rice, Dave Cibula, and Chris Peeler of Cooper B-Line informed Neil Krovats during a conference call that Cooper B-Line would no longer distribute C-PORT® products for Clearline in the United States, effective immediately.  Clearline's last sale to Cooper B-Line was on April 30, 2008.

15.     On or about July 2008, Clearline became aware that Defendants were selling confusingly similar roof-top support products under the trademark DURA-BLOK™. As shown below in Figure 1, the DURA-BLOK™ products (an exemplar of which is on the left-hand side of the photo) have the same non-functional shape, dimensions, color, and yellow striping as the C-PORT® products (an exemplar of which is on the right-hand side of the photo), and are also sold through a catalogue that is virtually identical to the catalogue developed and used by Clearline. In addition, many of Defendants' products bear product identifiers and specifications that are confusingly similar to Clearline's product identifiers.  For example, the Cooper B-Line "DBP" roof support measures 4" high, 6" wide, and 9.6" long, and supports a load of 500 pounds, while the substantially identical Clearline "CXP" roof support bears the exact same dimensions and supports the same load.  In another example, the Cooper B-Line line of "DBE" adjustable-height roof supports are available in model numbers DBE10-8,

DBE10-12, and DBE10-16, while the substantially identical Clearline "CE" series is available in model numbers CE10-8, CE10-12, and CE20-16.



Figure 1.

16.     Defendants' DURA-BLOK™ products have created and continue to create substantial confusion in the marketplace.   Cooper Technologies filed the application to register the DURA-BLOK™ on December 15, 2008, and the mark was registered on the USPTO's principal register on September 14, 2010.

17.     Upon information and belief, Cooper B-Line's website advertises DURA-BLOK™ products.

18.     Upon information and belief, Cooper Industries' website advertises DURA-BLOK™ products.

19.     Upon information and belief, a partnership exists among the Defendants in that Cooper Industries indirectly owns both Cooper B-Line and Cooper Technologies. Further, upon information and belief, common elements of control exist between Cooper

B-Line and Cooper Technologies in that, *inter alia*, at least one individual is an officer and board member of both entities. Cooper Technologies had a duty to supervise the use of the DURA-BLOK™ mark. Upon information and belief, Cooper Technologies knew or should have known that Cooper B-Line was obligated to respect Clearline's intellectual property rights pursuant to the Proprietary Information Agreement that had been executed by both Clearline and Cooper B-Line.

20. Upon information and belief, Cooper Industries exerts control over Cooper B-Line by virtue of Cooper Industries' indirect ownership of Cooper B-Line. Upon information and belief, such control extends to the operation of the Cooper B-Line website.

21. Upon information and belief, Defendants Cooper Industries, Cooper Technologies, and Cooper B-Line exercise joint control over the use of the DURA-BLOK™ mark including the advertising of DURA-BLOK™ products and the operation of the Cooper B-Line and Cooper Industries websites.

22. Upon information and belief, Cooper B-Line and Cooper Industries also use and continue to use Clearline's C-PORT® mark in meta-tags associated with Cooper B-Line's and Cooper Industries' websites, with the intent to trade on the reputation and goodwill of Clearline.

## IV. CAUSES OF ACTION

**Count 1 – False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement under 15 U.S.C. §1125(a)**

23.     Clearline repeats and re-alleges the allegations in paragraphs 1-22 as though fully set forth herein.

24.     Upon information and belief, Defendants have knowingly used and continue to use Clearline's distinctive trade dress in connection with Cooper B-Line's manufacture, advertisement, promotion, and sale of its DURA-BLOK™ products.

25.     Defendants' use of Clearline's distinctive trade dress causes confusion and mistake and deceives as to the affiliation, connection, or association of Defendants with Clearline and/or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities with or by Clearline.

26.     Defendants, in commercial advertising or promotion, misrepresent the nature, characteristics, qualities, or geographic origin of Defendants' goods, services or commercial activities.

27.     Defendants' acts constitute false designations of the origin and/or sponsorship of Cooper B-Line's and Cooper Technologies' goods and constitute trade dress infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

28.     As a direct and proximate result of Defendants' conduct, Clearline has suffered damages to its valuable trade dress, and other damages in an amount to be proved at trial.

### Count 2 – Common Law Trade Dress Infringement

29.     Clearline repeats and re-alleges the allegations in paragraphs 1-28 as though fully set forth herein.

30.     Defendants' acts complained of herein constitute trade dress infringement under the common law of the state of Illinois.

31.     As a direct and proximate result of Defendants' conduct, Clearline has suffered damages to its valuable trade dress, and other damages in an amount to be proved at trial.

### Count 3 –Illinois Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*)

32.     Clearline repeats and re-alleges the allegations in paragraphs 1-31 as though fully set forth herein.

33.     Defendants' acts complained of herein constitute deceptive trade practices in violation of 815 ILCS 510/2 in that they are likely to cause confusion or misunderstanding as to the source, sponsorship, or approval of Defendants' products and/or services.  Defendants' deceptive conduct also creates a likelihood of confusion as to the affiliation, connection, or association of its goods with those of Clearline. Furthermore, Defendants' conduct disparages the services of and the business of Clearline by false and misleading representation of fact through its pervasive conduct directed at an attempt to destroy Clearline's goodwill.

34.     As a direct and proximate result of Defendants' conduct, Clearline has suffered irreparable harm and other damages in an amount to be proved at trial.

### Count 4 – Trademark Infringement under 15 U.S.C. § 1114(a)

35.     Clearline repeats and re-alleges the allegations in paragraphs 1-34 as though fully set forth herein.

36.     Upon information and belief, Cooper B-Line operates a website with the address http://www.cooperbline.com.   Cooper Industries is the registrant of said website. Upon information and belief, Cooper Industries operates a website with the address

http://www.cooperindustries.com. Cooper B-Line and Cooper Industries have used and continue to use Clearline's C-PORT® mark in meta-tags associated with Cooper B-Line's and Cooper Industries' websites, with the intent to trade on the reputation and goodwill of Clearline.

37.     On information and belief, Cooper B-Line has used and continues to use Clearline's C-PORT® mark during trade shows and other such industry events, with the intent to trade on the reputation and goodwill of Clearline.  For example, Cooper B-Line's "Booth Profile" from the 2011 International Roofing Expo states that Cooper B-Line features "the most innovative, environmentally friendly C-Port Rooftop Support System."

38.     Cooper B-Line's and Cooper Industries' unauthorized use of Clearline's C-PORT® mark falsely indicates to consumers that Cooper B-Line's products originate from, are approved by, are sponsored by, are licensed by, or are affiliated with Clearline, or are otherwise associated with Clearline's products.

39.     Cooper B-Line's and Cooper Industries' unauthorized use of Clearline's C-PORT® mark in the manner described above has caused confusion, caused mistake, and/or deceived customers and potential customers of the parties by suggesting some affiliation, connection, or association of Cooper B-Line with Clearline.

40.     Cooper B-Line's and Cooper Industries' actions, as described above, constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. §1114(1).

### Count 5 – Fraud

41.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-40 as though fully set forth herein.

42.     Upon information and belief, Cooper B-Line made material representations to Clearline regarding business activity. On or about July 2007, Dave Rice and Chris Peeler of Cooper B-Line represented to Neil Krovats of Clearline that Cooper B-Line wished to enter into a contract to distribute 700,000 units of C-PORT® products over the next year, but that Clearline would need to increase its capacity in order for that to occur.

43.     Cooper B-Line's representations were material because, but for the representations, Clearline would not have expanded its facilities. Based on Cooper B-Line's representations, Clearline increased its capacity by moving to a new 25,000 square foot facility, signing a five-year lease, entering into a contract to purchase $700,000 of equipment, and spending $10,000 in legal fees to prepare a new contract for Cooper B-Line.

44.     Clearline subsequently learned that Cooper B-Line had no intention of continuing to distribute the C-PORT® products and knowingly induced Clearline to expend resources to Clearline's financial disadvantage.

45.     Upon information and belief, Cooper B-Line knew its representations to Clearline were false and made its representations with the intent that Clearline rely and act on them, which Clearline did in expanding its facilities and spending large amounts of money on legal fees.

46.     Cooper B-Line's false representations caused injury to Clearline in the form of costs for expansion and legal fees.

### Count 6—Misappropriation of Trade Secrets (765 ILCS 1065)

47.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-46 as though fully set forth herein.

---

48.     Defendants' acts complained of herein constitute misappropriation of trade secrets in violation of 765 ILCS 1065.

49.     On information and belief, Cooper B-Line has used Clearline's trade secrets, including but not limited to technical information and financial information, to create said products to compete with Clearline's C-Port products.

50.     Cooper B-Line's use of Clearline's trade secrets is in violation of the Proprietary Information Agreement between Clearline and Cooper B-Line dated April 9, 2003.

51.     Cooper B-Line has used Clearline's trade secrets to compete with Clearline without the express or implied consent of Clearline.

52.     Upon information and belief, at the time of Cooper B-Line's improper use of Clearline's trade secrets, Cooper B-Line knew that the trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and to limit their use.

53.     On information and belief, Cooper B-Line's misappropriation of Clearline's trade secrets was and continues to be willful and malicious.

54.     Cooper B-Line's misappropriation of Clearline's trade secrets has caused and continues to cause injury to Clearline.

### Count 7—Breach of Contract

55.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-54 as though fully set forth herein.

56.     Cooper B-Line's acts complained of herein constitute a breach of contract under the common law of the Province of Manitoba.  In addition, Cooper B-Line's acts complained of herein constitute a breach of contract under the common law of the state of Illinois.

57.     On April 9, 2003, Clearline entered into a Proprietary Information Agreement ("the Agreement") with Cooper B-Line.

58.     The Agreement states, in part, that Cooper B-Line cannot use Clearline's proprietary information to manufacture, directly or indirectly, products that compete with Clearline's products.

59.     On information and belief, on or around the beginning of 2008, Cooper B-Line began manufacturing, through a third party, products that are virtually identical to Clearline C-Port products.

60.     On information and belief, Cooper B-Line utilized Clearline's proprietary information, including but not limited to technical information and financial information, to create said products to compete with Clearline's C-Port products, in violation of the Agreement.

61.     On information and belief, Cooper B-Line's breach of the Agreement was willful and malicious.

62.     Cooper B-Line's breach of the Agreement has caused and continues to cause damage to Clearline.

**Count 8—Intentional Interference with Prospective Economic Advantage**

63.     Plaintiff repeats and re-alleges the allegations in paragraphs 1- 62 as though fully set forth herein.

64.     Cooper B-Line's acts complained of herein constitute an intentional interference with prospective economic advantage under the common law of the state of Illinois.

65.     On information and belief, Cooper B-Line used Plaintiff's proprietary information and trade secrets to manufacture, directly or indirectly, products that compete with Plaintiff's products.

66.     On information and belief, Cooper B-Line made material representations, knowing them to be false, to Plaintiff.  Plaintiff relied upon such representations to significantly expand its manufacturing capabilities.

67.     On information and belief, on or around the beginning of 2008, Defendants began manufacturing, through a third party, products that are virtually identical to Plaintiff's C-Port products.

68.     Prior to Defendants' actions of manufacturing and selling the virtually identical products, a business relationship existed between Plaintiff and both end-users and independent representatives of Plaintiff's C-Port products in the United States wherein Plaintiff provided warranty support to end-users, technical support to end-users through a toll-free phone number, and sales support to independent representatives who sold Plaintiff's C-Port products.

69.     Plaintiff reasonably held an expectancy that such business relationship between Plaintiff and the end-users of Plaintiff's products would continue.

70.     Defendants were aware of the business relationship between the Plaintiff and such end-users of Plaintiff's products.

71.     On information and belief, Defendants intentionally and unjustifiably interfered with the business relationship between Plaintiff and said end-users and independent representatives of Plaintiff's products by Defendants' actions described herein, including, without limitation, breaching its agreement with Plaintiff; inducing Plaintiff to expand its manufacturing capabilities and extend itself financially;

manufacturing, through a third party, products that are virtually identical to Plaintiff's C-Port products; and selling such products to end-users who previously used Plaintiff's products.

72.    Defendants' acts complained of herein have caused and continue to cause damage to Plaintiff.

## V. PRAYER FOR RELIEF

Plaintiff Clearline respectfully requests that judgment be entered in its favor and against Defendants and respectfully requests that the Court grant the following relief:

(a) Issue a preliminary and permanent injunction enjoining Defendants from using Clearline's trade dress or engaging in any other activity constituting unfair competition with Clearline with respect to Clearline's trade dress, pursuant to 15 U.S.C. § 1116;

(b) Order that Defendants deliver for destruction all products, labels, tags, signs, prints, packages, videos, and advertisements in its possession or under its control bearing or using Clearline's trade dress, pursuant to 15 U.S.C. § 1118;

(c) Award Clearline its damages trebled or Defendants its profits trebled, whichever is greater, plus Clearline's costs and attorneys' fees, pursuant to 15 U.S.C. § 1117;

(d) Award Clearline its damages trebled, plus Clearline's costs and attorneys' fees, pursuant to 765 ILCS 1065;

(e) Award Clearline its damages arising out of Defendants' acts;

(f) Award interest, including pre-judgment interest, on the foregoing sums; and

(g) Award such other relief as the Court deems just and proper.

## VI. JURY DEMAND

In accordance with Federal Rules of Civil Procedure 38 and 39, Plaintiff Clearline asserts its rights under the Seventh Amendment of the United States Constitution and demands a trial by jury on all issues.

Dated: June 20, 2011                     Respectfully submitted,


By:  /s/ Robert D. Katz
          Robert D. Katz
          *Attorney-in-Charge*
          rkatz@pattonroberts.com
          State Bar No. 24057936
          Jon B. Hyland
          (Admission Pending)
          jhyland@pattonroberts.com
          State Bar No.  24046131
          PATTON ROBERTS, PLLC
          901 Main St., Suite 3300
          Dallas, Texas  75202
          Telephone:  214-580-3825
          Facsimile:  903-334-7007

          Attorneys for Plaintiff
          Clearline Technologies Ltd.