UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLEARLINE TECHNOLOGIES LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1420 |
| | § | |
| COOPER B-LINE, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending before the Court are Cooper Industries plc's Motion to Dismiss for Failure to State a Claim in Plaintiff's First Amended Complaint ("Cooper plc's Motion") (Doc. No. 24) and Cooper B-Line, Inc.'s Motion to Dismiss for Failure to State a Claim in Plaintiff's First Amended Complaint ("Cooper B-Line's Motion) (Doc. No. 26). After considering the parties' arguments and the applicable law, the Court finds that Defendants' Motions to Dismiss should be granted in part.

## I.   BACKGROUND[1]

Plaintiff Clearline Technologies Ltd. ("Plaintiff" or "Clearline")[2] brings this action against Defendants Cooper B-Line, Inc. ("Cooper B-Line")[3] and Cooper Industries plc ("Cooper plc")[4] (collectively, "Defendants")[5] for claims arising out of Defendants' alleged misrepresentations, misappropriation of trade secrets, and infringement of Plaintiff's trademark and trade dress. Clearline's trademark and trade dress claims arise out of its C-PORT®

---

[1] The following facts are drawn from Clearline's First Amended Complaint (Doc. No. 17) and are accepted as true for purposes of the Motion to Dismiss.
[2] Clearline is a Canadian limited company with a principal place of business in Winnipeg, Canada. (Am. Compl. ¶ 1.)
[3] Cooper B-Line is a Delaware corporation with a principal place of business in Highland, Illinois. (*Id.* ¶ 2.)
[4] Cooper plc is incorporated under the laws of Ireland and is believed to have a principal place of business and administrative headquarters in Houston, Texas. (*Id.* ¶ 4.)
[5] The parties stipulated to a dismissal of the third defendant, Cooper Technologies Company. (Doc. No. 32.)

trademark, which is used in connection with the sale of its rooftop support products.  (Am. Compl. ¶ 10.)  Clearline filed an application to register this mark in November 2005, and it was registered on the United States Patent and Trademark Office's (USPTO) principal register on April 17, 2007.  Clearline also has acquired protectable rights in the trade dress of the distinctive C-PORT® products, which includes "their non-functional shape, dimensions, color, and yellow striping."  (*Id.* ¶ 12.)

In April 2003, Clearline entered into a Proprietary Information Agreement with Cooper B-Line, which provided that Clearline and Cooper B-Line "would evaluate and negotiate the prospect of Clearline supplying strut supports, bridge supports, and other related rooftop support products to Cooper B-Line."  (*Id.* ¶ 9.)  They also reached an oral agreement that granted Cooper B-Line exclusive rights to sell Clearline's products within the United States.  (*Id.*)  Clearline first sold its C-PORT® products to Cooper B-Line for distribution in the United States in December 2005, and over 70% of its C-PORT® sales were made to Cooper B-Line in 2006 and 2007.  (*Id.* ¶ 11.)

In July 2007, Dave Rice and Chris Peeler of Cooper B-Line represented to Clearline founder Neil Krovats that Cooper B-Line wished to enter into a contract to distribute 700,000 units of C-PORT® products over the next year; however, Clearline would need to increase its capacity first.  (*Id.* ¶ 13.)  Clearline, acting in reliance on that request, increased its capacity by signing a 5-year lease for a larger facility, contracting to purchase $700,000 of equipment, and expending $10,000 in legal fees to prepare a new contract for Cooper B-Line.  (*Id.*)  Without warning, Dave Rice, Dave Cibula, and Chris Peeler of Cooper B-Line informed Neil Krovats in April 2008 that, effective immediately, Cooper B-Line would no longer distribute C-PORT® products for Clearline in the United States.  (*Id.* ¶ 14.)

Clearline became aware that Defendants were selling confusingly similar roof-top support products under the trademark DURA-BLOK™ in July 2008.  (*Id.* ¶ 15.)  Cooper Technologies Company filed the application to register the trademark on December 15, 2008, and it was registered on the USPTO's principal register on September 14, 2010.  (*Id.* ¶ 16.)  The DURA-BLOK™ products have the same non-functional shape, dimensions, color, and yellow striping as the C-PORT® products.  (*Id.* ¶ 15.)  They are sold through a catalogue that is virtually identical to the catalogue developed and used by Clearline, and they bear product identifiers and specifications that are very similar to those of Clearline.  (*Id.*)  The websites of both Cooper B-Line and Cooper plc advertise the DURA-BLOK™ products.  (*Id.* ¶¶ 17–18.)  Clearline asserts that, because of Cooper plc's indirect ownership of Cooper B-Line, Cooper plc exerts control over Cooper B-Line, and such control extends to the operation of Cooper B-Line's website.  (*Id.* ¶ 20.)  Furthermore, together with former defendant Cooper Technologies, Defendants exercise joint control over the use of the DURA-BLOK™ mark, including the advertisements and operation of the websites.  (*Id.* ¶ 21.)  Cooper B-Line and Cooper plc also continue to use Clearline's C-PORT® mark in meta-tags[6] associated with their websites, with intent to trade on the reputation and goodwill of Clearline.  (*Id.* ¶ 22.)

Clearline's Amended Complaint contains various claims for relief labeled as Counts 1–8: (1) false designation of origin or sponsorship, false advertising, and trade dress infringement under 15 U.S.C. § 1125(a); (2) common law trade dress infringement; (3) violations of the Illinois Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*); (4) trademark infringement

---

[6] Plaintiff, in its sur-reply to Cooper plc's Motion, explains that a meta-tag is "a special HTML tag that is used to store information about a Web page but is not displayed in a Web browser. . . . Many search engines use the information stored in meta tags when they index web pages."  (Surreply to Cooper plc's Mot. at 5 (citing TechTerms.com, http://www.techterms.com/definition/metatag).)  Therefore, Plaintiff urges that "[t]he Court may reasonably infer that a consumer who uses a search engine to find Clearline's C-Port products will be directed to Cooper Industries' website, where the consumer will find support blocks that appear confusingly similar to Clearline's products."  (*Id.*)

under 15 U.S.C. § 1114(a); (5) fraud; (6) misappropriation of trade secrets (765 ILCS 1065); (7) breach of contract; and (8) intentional interference with prospective economic advantage. Clearline has clarified that it intended to assert counts 1–4 against both defendants, and counts 5–8 against Cooper B-Line only.[7]

Defendants move to dismiss for failure to state a claim under Rule 12(b)(6).  Cooper plc asserts that Clearline has not alleged facts sufficient to state a claim against it under counts 1 (trade dress infringement, false designation of origin, and false advertising), 2, 3, 6, and 8. Cooper B-Line alleges that counts 1 (false advertising), 3, 5, 6, 7, and 8 are deficient.

## II.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels

---

[7] Although Clearline represents that it did not intend to assert a claim against Cooper plc in counts 6 and 8, these counts use the term "Defendants" without specifying that the claims are only directed against Cooper B-Line. Accordingly, the Court dismisses these counts with respect to Cooper plc.

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).  The Court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Under Federal Rule of Civil Procedure 12(d), a motion to dismiss must be treated as a Rule 56 motion for summary judgment if the court considers matters outside the pleadings in deciding the motion. Before a Rule 12(b)(6) motion may be converted to a Rule 56 motion, a court must be satisfied that "the nonmoving party has . . . had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986) (citing Fed. R. Civ. P. 56(f)).

### III.   ANALYSIS

#### A.  Count 1: 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).  Clearline asserts that Count 1 of its Amended Complaint contains three separate claims: (1) trade dress infringement (pursuant to 15 U.S.C. § 1125(a)(1)(A)); (2) false designation of origin or sponsorship (pursuant to 15 U.S.C. § 1125(a)(1)(A)); and (3) false advertising (pursuant to 15 U.S.C. § 1125(a)(1)(A)).  (Resp. to Cooper plc's Mot at 4.) However, since the amendments in 1992, the two prongs of § 1125(a) have been codified as: (1) infringement of unregistered marks or trade dress in § 1125(a)(1)(A), and (2) false advertising in § 1125(a)(1)(B).  *Id.  See also* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair

Competition § 27:9 (4th ed. 2011).  Section 1125(a) prohibits the use of any "false designation of origin" in both prongs.  A traditional "false designation of origin case is very often one of 'passing off' or 'reverse passing off': a defendant markets and sells its product under the trade name or dress of a competitor (to capitalize on the goodwill and brand loyalty the competitor has built up) or markets and sells the competitor's products under defendant's trade name and dress (perhaps to capitalize on the competitor's superior products, or to save on manufacturing costs)." *Heartbrand Beef, Inc. v. Lobel's of New York, LLC,* Civ. A. No. V-08-62, 2009 WL 311087, at *2 (S.D. Tex. Feb. 5, 2009).  Thus, Clearline's false designation of origin claim is equivalent to Clearline's asserted claim for trade dress infringement, and therefore the Court will treat them as one.  *See also* Am. Compl. ¶ 27 ("Defendants' acts constitute false designations of the origin and/or sponsorship of Cooper B-Line's and Cooper Technologies' goods and constitute trade dress infringement and unfair competition.").

### 1.  Trade Dress Infringement and False Designation of Origin

Section 1125(a) creates a cause of action for trade dress infringement that is analogous to the common law tort of unfair competition.  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 250–51 (5th Cir. 2010) (quoting *Blue Bell Bio-Med. v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989).  "Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Id.* at 251 (citations omitted). "[T]he inquiry does not focus on isolated elements of the dress, but on whether a combination of features creates a distinctive visual impression, identifying the source of the product." *Sunbeam Products, Inc. v. West Bend Co.*, 123 F.3d 246, 251 n.1 (5th Cir. 1997).

7

A claim for trade dress infringement under § 1125(a) consists of a showing that: (1) the trade dress is protectable, meaning it is inherently distinctive or has acquired secondary meaning; (2) the products are functional; and (3) the defendant's trade dress creates a likelihood of confusion. *See Lady Primrose's, Inc. v. After Hours Bath Products, Inc.,* 211 F.3d 125, 2000 WL 309967, at *2 (5th Cir. March 6, 2000) (citing *Sunbeam,* 123 F.3d at 251). Each element is a question of fact. *Id.* (citing *Pebble Beach Co. v. Tour 18 Ltd.,* 155 F.3d 526, 536 (5th Cir. 1998). Additionally, a plaintiff must show that the defendant "uses in commerce" the plaintiff's trade dress. 15 U.S.C. § 1125(a)(1).

Cooper plc argues that "Clearline has not alleged any facts in its amended complaint showing that Cooper plc used its trade dress." (Reply to Cooper plc's Mot. ¶ 3.) However, Clearline alleged that the DURA-BLOK™ products incorporated Clearline's trade dress, including the non-functional shape, dimensions, color, and yellow striping. (Am. Compl. ¶ 15.) Clearline has also alleged that the DURA-BLOK™ products were advertised on Cooper plc's and Cooper B-Line's websites. (*Id.* ¶ 17–18.) It has further posited that Cooper plc is the registrant of Cooper B-Line's website and controls its content. (*Id.* ¶¶ 20, 36.)[8]

Moreover, Clearline alleges that the trade dress of its C-PORT® products is inherently distinctive and has developed a secondary meaning (Am. Compl. ¶ 12), which Cooper plc does not dispute in its Motion or Reply. It also alleges that the DURA-BLOK™ products create a likelihood of confusion because of their similarities in product identifies and specifications as well as their sale in catalogues identical to those used by Clearline. (*Id.* ¶¶ 15–16.)

---

[8] Cooper plc urges the Court to convert its motion to a motion for summary judgment in order to consider the Affidavit of Terrance Helz. (Cooper plc's Mot. ¶ 20 n.2.) Mr. Helz swears that Cooper plc is not the registrant of Cooper B-Line's website. (*Id.* (citing Helz Aff. ¶ 8).) Plaintiff argues that the Court should not make factual determinations at this stage of the litigation, but also produces an affidavit that shows that a website ownership search reveals Cooper plc as the registrant. (Resp. at 8.) The Court declines to convert the motion to dismiss to a motion for summary judgment at this stage of the litigation, as Clearline has not had an adequate opportunity for discovery on this issue.

Cooper plc argues that the Court should dismiss Clearline's § 1125(a) claims against it because the Amended Complaint "does not identify or mention a single *Cooper plc* product." (Reply to Cooper plc's Mot. ¶ 9.)  Clearline asserts that Cooper plc infringed on Clearline's trade dress by advertising DURA-BLOK products on its website and on Cooper B-Line's website, over which Cooper plc retained some control.  The Amended Complaint also alleges generally that "Defendants were selling confusingly similar rooftop products," but references only Cooper B-Line's products.  (Am. Compl. ¶ 15.  There is no allegation the Cooper plc sold the infringing goods.

Section 43(a) of the Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods, . . . uses in commerce" the allegedly infringing goods.  15 U.S.C. § 1125(a).  The Lanham Act further defines the word "commerce" to mean "all commerce which may lawfully be regulated by Congress," and states that "a mark shall be deemed to be in use in commerce" on goods when "the goods are sold or transported in commerce."  15 U.S.C. § 1127.  Mere advertising is not sufficient to show that goods[9] are used in commerce.  *See Central Mfg., Inc. v. Brett*, 492 F.3d 876 (7th Cir. 2007).  However, use of a mark or protected trade dress in a website or catalog "with a picture and description of the product constitutes a display associated with goods and not mere advertising because of the 'point of sale' nature of the display." *Menashe v. V Secret Catalogue, Inc.*, 409 F. Supp. 2d 412, 424 (S.D.N.Y. 2006) (citing *Lands' End, Inc. v. Manback,* 797 F.Supp. 511, 514 (E.D. Va. 1992)).

---

[9] For services, a mark is in "use in commerce" when it is "used or displayed in the sale or advertising of services and the services are rendered in commerce."  15 U.S.C. § 1127.  "Even in cases applying the services definition, many courts have held mere advertising is not enough to constitute 'use in commerce' because 'a mark is used in commerce only if it accompanies services rendered in commerce.'"  *Sensient Technologies Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754 (8th Cir. 2010) (citing *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco,* 329 F.3d 359, 364 (4th Cir. 2003)).

The Amended Complaint is devoid of allegations that Cooper plc "sold or transported" any of the products in commerce that allegedly infringed on Clearline's trade dress.  Clearline's Amended Complaint does not provide any information about the advertisement that appears on Defendants' websites, and does not clarify whether or not the products were, in fact, offered for sale on the website.[10]  Without more information, it is unclear how Cooper plc's alleged actions constituted a "use in commerce" of Clearline's trade dress.  Clearline's trade dress infringement claim against Cooper plc is dismissed, with leave to amend.

### 2.  False Advertising

The Fifth Circuit has listed five elements that must be proven in establishing a prima facie case of false advertising:

> (1) A false or misleading statement of fact about a product;
> (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;
> (3) The deception was material, in that it is likely to influence the consumer's purchasing decision;
> (4) The product is in interstate commerce; and
> (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut v. Papa John's Intern.,* 227 F.3d 489, 495 (5th Cir. 2000).  Clearline's Amended Complaint does not provide any information about any alleged misrepresentations or misleading statements of fact.  Therefore, the Court must dismiss this claim against both defendants, with leave to amend.  *See Axxiom Mfg., Inc. v. McCoy Investments*, *Inc.*, Civ. A. No. H-09-3735, 2010 WL 2545584, at * 7 (S.D. Tex. June 21, 2010) ("Although the Fifth Circuit has not held that a heightened pleading standard under Rule 9 applies to allegations of false statements in an unfair

---

[10] Although Clearline's Surreply to Cooper plc's Motion asserts that "Cooper Industries has . . . offer[ed] DURA-BLOK™ products for sale on its website," Clearline did not include this allegation in its Amended Complaint. (Surreply to Cooper plc's Mot. at 3.)   The Amended Complaint also contains allegations that the products were sold through a catalogue (Am. Compl. ¶ 15), but Clearline fails to identify who owns or controls this catalogue.

competition claim, there must be some factual allegation about what the alleged misrepresentation was.").

### B.  Count 2: Illinois[11] Common Law Trade Dress Infringement

Cooper plc moves to dismiss Clearline's claim of common law trade dress infringement, but fails to provide the Court with the relevant standard or any reason why Clearline's Amended Complaint has failed to state a claim under Illinois common law.  Under Illinois law, the analysis of a plaintiff's common law trade dress infringement generally is the same as that of its claims under § 1125(a).  *Specht v. Google Inc.,* 758 F. Supp. 2d 570, 595–96 (N.D. Ill. 2010).  This is because "[t]he principles of trademark law and the tests for infringement are rooted in the common law under both state and federal statutes."  *Jim Mullen Charitable Foundation v. World Ability Federation, NFP,* 917 N.E.2d 1098, 1104 (Ill. App. Ct. 2009).  Cooper plc has not asserted that the same "use in commerce" requirement, and its statutory definition in 15 U.S.C. § 1127, also applies under Illinois common law.

Cooper plc cites only one case in support of its motion to dismiss Count 2.  In *All One God Faith, Inc. v. Hain Celestial Group, Inc.*, 2009 WL 4907433, at *9 (N.D. Cal. 2009), the court dismissed the plaintiff's false advertising claims against one defendant because the complaint did not explain how that defendant's products directly competed with the plaintiff's products.  *All One God*, 2009 WL 4907433, at *9.  Cooper plc fails to explain how this case is relevant to Illinois law or how it supports its assertion that Count 2 should be dismissed because Cooper plc has not sold any products.  Accordingly, Cooper plc has failed to satisfy its burden, and the Court will not dismiss Count 2.

---

[11] Neither Defendant disputes that Illinois law governs this action.

**C.  Count 3: Illinois Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*)**

Clearline alleges that Defendants violated the Illinois Uniform Deceptive Trade Practices

Act ("IUDTPA"), 815 ILCS 510/2, by causing confusion as to the source and affiliation of the

products and by disparaging Clearline's services and business by false or misleading

representations of fact.  815 ILCS 510/2(a)(2), (a)(3), (a)(8).  As stated above, Clearline has

failed to identify any false or misleading representations of fact, as required under 815 ILCS

510/2(a)(8).  Therefore, the Court focuses on the allegations under 815 ILCS 510/2(a)(2) and

(a)(3).

Because Cooper plc has not challenged the trademark infringement claims against it

under 15 U.S.C. § 1114(a) (Count 4), the IUDTPA claims should also stand.  *See MJ & Partners*

*Rest. Ltd. v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (IUDTPA claims "must rise or

fall based on the Lanham Act"); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F.Supp. 567, 579 (N.D. Ill.

1994) ("Claims for unfair competition and deceptive business practices brought under Illinois

statutes are to be resolved according to the principles set forth under the Lanham Act."  (citing

*Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983))).

Nevertheless, Cooper plc argues that Clearline has failed to state a claim under Count 3

because it has not pled any facts showing likelihood of confusion by Cooper plc's use of meta-

tags.[12]  *See Medafor, Inc. v. Starch Medical Inc.*, 2009 WL 2163580, at *2 (D. Minn. July 16,

---

[12] Meta tags have been defined as follows:

> Meta tags consist of words and phrases that are intended to describe the contents of a website.
> These descriptions are embedded within the website's computer code. Although websites do not
> display their meta tags to visitors, Internet search engines utilize meta tags in various ways. First,
> when a computer user enters particular terms into an Internet search engine, the engine may rank a
> webpage that contains the search terms within its meta tags higher in the list of relevant results.
> Second, when a particular webpage is listed as a relevant search result, the search engine may use
> the meta tags to provide the searcher a brief description of the webpage.

*North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1216 n.2 (11th Cir. 2008) (citing
*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999)).

2009).  The Amended Complaint states that Cooper plc used Clearline's C-PORT® mark in meta-tags associated with its website with the intent to trade on the reputation and goodwill of Clearline.  (Am. Compl. ¶¶ 22, 36.)  The Court finds that there are sufficient facts to find a likelihood of confusion stemming from Cooper plc's use of Clearline's trademark in its meta-tags.  The use of meta-tags has been compared to the use of a misleading sign on a freeway:

> Suppose West Coast's competitor (let's call it "Blockbuster") puts up a billboard on a highway reading—"West Coast Video: 2 miles ahead at Exit 7"—where West Coast is really located at Exit 8 but Blockbuster is located at Exit 7. Customers looking for West Coast's store will pull off at Exit 7 and drive around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the highway entrance, they may simply rent there.

*Brookfield*, 174 F.3d at 1064; *see also Coca-Cola Co. v. Purdy*, 382 F.3d 774 (8th Cir. 2004). Some courts have criticized the use of this metaphor, arguing that resuming one's internet search is easier than finding the physical store that the customer initially intended to patronize.  *See Bihari v. Gross*, 119 F. Supp. 2d 309, n. 15, (S.D.N.Y. 2000); *Hearts on Fire Company, LLC v. Blue Nile, Inc.*, 603 F. Supp. 2d 274 (D. Mass. 2009).  However, if the goods are similar enough to cause confusion, the customer may buy or become interested in the advertised goods without returning to his original internet search.  *See Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936 (9th Cir. 2002) ("[A]ctionable initial interest confusion on the Internet is determined, in large part, by the relatedness of the goods offered and the level of care exercised by the consumer."); *Network Network v. CBS, Inc*., No. CV 98–1349 NM(ANX), 2000 WL 362016, at *9 (C.D. Cal. Jan. 18, 2000) ("A trademark violation based on initial interest confusion involves the junior user capitalizing on the senior user's goodwill. . . . Thus, relatedness of products is an important component in the analysis.")  Clearline has alleged that the products depicted on Cooper B-Line's website had the same shape, dimensions, color, and yellow striping as Clearline's trademarked products (Am. Compl. ¶ 15); a customer directed to its website could

have mistaken the DURA-BLOK™ products for C-PORT® products or inferred that the two products were related.  Therefore, there are sufficient facts in the Amended Complaint to support a finding that the use of Clearline's mark in meta-tags caused a likelihood of confusion.

However, there is one difference between Clearline's IUDTPA and Lanham Act claims that no party has raised in its briefings.  The IUDTPA has a more limited reach, and prohibits deceptive trade practices occurring "primarily and substantially in Illinois."  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005); *see also Super Wash, Inc. v. Sterling*, 2006 WL 533362, at *2 (N.D. Ill. 2006) (applying *Avery* to the IUDTPA because the Consumer Fraud Act explicitly incorporates § 2 of the IUDTPA).  Evidence of a nationwide practice is not sufficient. *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, -- F.Supp.2d --, 2011 WL 3510889, at *4 (N.D. Ill. 2011).  "The *Avery* court . . . pointed to the following factors to guide the analysis: (i) plaintiff's residence, (ii) where the deception occurred, (iii) where the damage to plaintiff occurred, and (iv) whether plaintiff communicated with defendants or its agents in Illinois."  *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.,* No. 04–CV–6504, 2007 WL 164603, at *3 (N.D. Ill. Jan. 12, 2007).  Clearline has not pled any facts that would allow the Court to infer that the conduct occurred "primarily and substantially" in Illinois.  Therefore, this claim must be dismissed against both defendants, and Clearline will have the opportunity to replead if the conduct did occur primarily in Illinois.

### D.  Vicarious Liability under Counts 1-3

Liability for trademark infringement extends beyond those who actually sell infringing goods.  Courts have found defendants liable on indirect liability theories, including contributory trademark infringement and vicarious liability.  Cooper plc's Motion asserted that Clearline failed to state a claim under both contributory trademark infringement and vicarious liability.

14

Clearline's briefings only responded to the vicarious liability issue; thus, the Court considers vicarious liability to be the only secondary liability theory at issue in this case.[13]

Courts have imported common law concepts of agency, including vicarious liability, into the § 1125(a) analysis. *See, e.g.*, *Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1441 n.22 (3d Cir. 1994) ("*AT&T*").  Both parties agree that the test for vicarious liability requires "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product."[14] (Cooper plc's Mot. at 12; Resp. to Cooper plc's Mot. at 9 (citing *Hard Rock Cafe Licencing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992)); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007).  Clearline alleges that Cooper plc indirectly owns Cooper B-Line (Am. Compl. ¶ 5, 19), and that Cooper plc exerts control over Cooper B-Line by virtue of this ownership (*id.* ¶ 20).

Clearline asserts that "[i]t is certainly plausible that a partnership exists between the two companies and that Cooper Industries exercises control over Cooper B-Line."  (Resp. to Cooper plc's Mot. at 9.)  However, the Court cannot infer, solely on the basis that Cooper plc "indirectly owns" Cooper B-Line, that an actual or apparent partnership exists.  A partnership is distinct from the ownership relationship pled in the Amended Complaint.  *See Coach, Inc. v. Asia Pacific Trading Co.*, 676 F. Supp. 2d 914, 926 (C.D. Cal. 2009) ("Plaintiffs cite no authority—and the Court is unaware of any—to support their contention that such evidence, by itself, tends to

---

[13] Additionally, as Clearline's Amended Complaint does not specifically identify any secondary liability claims, the Court assumes they are intended as a secondary theory for its claims in Counts 1-3.  (*See* Surreply to Cooper plc's Mot. at 6.)

[14] Although the joint tortfeasor test is just one of many theories of liability that can apply under agency theory, the Court considers only this test in this Order, as it is the only one asserted by Plaintiff.  *See AT&T*, 42 F.3d at 1434– 41 & 1441 n.22 ("joint tortfeasor" test of *Hard Rock Cafe* just one of many agency theories considered by the court in its secondary liability analysis).

establish that two companies who otherwise maintain separate corporate identities nevertheless share a single identity for purposes of imposing liability for trademark rights violations.")  In order to survive a motion to dismiss, Clearline must provide additional allegations supporting their assertion that Defendants' relationship was like a partnership.  *See Gucci America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010) ("Though Gucci has raised a number of factual allegations that indicate that Defendants' services were crucial to a website like TheBagAddiction.com's sale of infringing goods, there is insufficient evidence to plausibly infer an actual or apparent partnership. The vague, puffery-like references to a "partnership" between these companies and website merchants are not enough to support vicarious liability."); *see also Broadvision Inc. v. Gen. Elec. Co.,* No. 08 Civ. 1478(WHP), 2009 WL 1392059, at *4 (S.D.N.Y. May 5, 2009) (for copyright infringement,[15] plaintiff "must show more than just a legal relationship between the parent and the subsidiary" to "state a claim for vicarious liability against [the] parent for the actions of its subsidiary.")

Clearline also alleges that Defendants exercise joint control over the use of the DURA-BLOK™ mark, including advertising of the products and the operation of the websites (Am. Compl. ¶ 21).  At most, Clearline has shown that Cooper plc assisted Cooper B-Line in marketing the products.  It has not shown that Cooper plc exercised joint control over the products themselves, as is required for this prong of the *Hard Rock Cafe* test.  *See Rosetta Stone Ltd. v. Google, Inc.*, 730 F.Supp.2d 531, 550 (E.D. Va. 2010) (finding Google was not liable under a vicarious liability theory because the plaintiff failed to show that Google "controls the appearance and content" of the infringing products or the use of the marks in those products).

---

[15] The tests for secondary trademark infringement are more difficult to satisfy than those required to find secondary copyright infringement.  *See Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 n. 19, 104 S. Ct. 774, 78 L.Ed.2d 574 (1984); *Perfect 10*, 494 F.3d at 806.

### E.  Count 5: Fraud

To state a claim for fraud under Illinois law, a plaintiff must allege facts that show "that defendants, with the intent to induce plaintiffs to act, made a false statement of material fact which defendants knew or believed to be false. Plaintiffs must also show they justifiably relied on the statement and suffered damages resulting from that reliance." *Association Benefit Svcs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 852–53 (7th Cir. 2007) (quoting *Williams v. Chicago Osteopathic Health Sys.,* 654 N.E.2d 613, 619 (Ill. App. Ct. 1995)).

#### 1.  Promissory Fraud

"The general standard for fraud refers to a false statement of material fact; promissory fraud, involving a false statement of intent regarding future conduct, is generally not actionable under Illinois law unless the plaintiff also proves that the act was a part of a scheme to defraud." *Id.* at 853 (citing *Bradley Real Estate Trust v. Dolan Assocs. Ltd.,* 640 N.E.2d 9, 12-13 (Ill. App. Ct. 1994); *Gen. Elec. Credit Auto Lease v. Jankuski,* 532 N.E.2d 361, 363-64 (Ill. App. Ct. 1988)).  Clearline alleges that "Dave Rice and Chris Peeler of Cooper B-Line represented to Neil Krovats of Clearline that Cooper B-Line wished to enter into a contract to distribute 700,000 units of C-PORT® products over the next year, but that Clearline would need to increase its capacity in order for that to occur."  (Am. Compl. ¶ 42.)  Cooper B-Line contends that a representation of a "*wish*[] to enter into a contract" is a statement of intent, rather than a false statement of material fact.  (Cooper B-Line's Mot. at 6.)  However, the Court finds that Clearline has alleged sufficient facts that, if true, show that "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 545 N.E.2d 672, 682 (Ill. 1989).

## 2.  Justified Reliance

"The question of justifiable reliance takes into account both what the plaintiff knew and what he could have learned through the exercise of ordinary prudence."  *Johnson v. Waterfront Services Co.*, 909 N.E.2d 342, 350 (Ill. App. Ct. 2009) (citing *Soules v. General Motors Corp.,* 402 N.E.2d 599, 601 (Ill. 1980)).  A court may consider "all of the circumstances surrounding the transaction, including the parties' relative knowledge of the facts available, opportunity to investigate the facts and prior business experience."  *Hassan v. Yusuf*, 944 N.E.2d 895, 916 (Ill. App. Ct. 2011).

Clearline has alleged sufficient facts to show that its reliance was justified.  The Amended Complaint states that Clearline had a preexisting relationship with Cooper B-Line; Cooper B-Line distributed over 70% of Clearline's C-PORT® products in the United States. (Am. Compl. ¶ 11.)  Clearline also had no indication that the relationship was in jeopardy.  (Am. Compl. ¶ 14.)  *See Hassan*, 944 N.E.2d at 915–17 (Ill. App. Ct. 2011) (finding that the plaintiff's reliance was justified because of the parties' longstanding relationship and the fact that the plaintiff trusted the defendant).

## 3.  Intent

Cooper B-Line asserts that Clearline's allegations of fraudulent intent do not meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  However, under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  In a case involving securities fraud, the plaintiff must allege specific facts that support an inference of fraud or show defendant's motive for committing fraud.  *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  This requirement arises because a plaintiff must prove scienter in order to prevail on a securities fraud claim, and scienter

requires "intent to deceive, manipulate, or defraud." *Id.* at 1067. Here, where the relevant standard is proving defendant's "intent to induce plaintiff[] to act," a plaintiff must allege facts that support this inference. *Caremark*, 493 F.3d at 852; *see also Nortel Networks Ltd. v. Kyocera Wireless Corp.*, No. CIV.A.3:02-CV-0032-D, 2002 WL 31114077, at *8 (N.D. Tex. Sept. 20, 2002) ("*Tuchman* in particular, and decisions of this court in general, that have required specificity in pleading fraudulent intent are securities fraud cases. . . . The court is not confident that these authorities can be applied outside the realm of securities actions that require proof of scienter."); *U.S. ex rel. Stewart v. The Louisiana Clinic*, 2002 WL 257690, at *4 n.5 (E.D. La. Feb. 22, 2002) (refusing to apply *Tuchman* where the underlying standard required only that the false claim be made "knowingly.")

Clearline asserts that Cooper B-Line represented that it would like to enter into a larger contract with Clearline only after Clearline increased its capacity. (Am. Compl. ¶ 13.) Therefore, the Court finds that the facts in the Amended Complaint support a finding that, in making the statement at issue, Cooper B-Line intended to induce Clearline to take actions such as moving to a larger office, buying additional equipment, and preparing a new contract. Clearline has also provided facts that support Cooper B-Line's motive for doing so; Clearline became over-extended financially, which damaged its ability to compete with Cooper B-Line's new DURA-BLOK™ products. Although Clearline's Amended Complaint includes some allegations "on information and belief," Clearline has set forth sufficient factual basis for the belief.

## F.  Count 6: Misappropriation of Trade Secrets

Under the Illinois Trade Secret Act, "[a] trade secret is information that is (1) 'sufficiently secret to derive economic value, actual or potential, from not being generally known

19

to other persons who can obtain economic value from its disclosure or use' and (2) 'the subject

of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.'"

*Dynamic Fluid Control (PTY) Ltd. v. International Valve Mfg., LLC*, 790 F.Supp.2d 732, 740–

41, (N.D. Ill. 2011) (citing 765 ILCS 1065/2(d) ).  "'Misappropriation' involves the improper

acquisition of a trade secret or the disclosure or use of a trade secret without consent."  *Id.* (citing

765 ILCS 1065/2(b)).

Clearline alleges only that Cooper B-Line "has used Clearline's trade secrets, including

but not limited to technical and financial information." (Am. Compl. ¶ 49.)  There is no

explanation of the technical and financial information that constitutes a trade secret.  In its

response, Clearline points out that it pled that it entered into a Proprietary Information

Agreement with Cooper B-Line.  (Resp. to Cooper B-Line's Mot. at 7 (citing Am. Compl. ¶ 9).)

However, the Court will not infer that trade secrets exist merely from the existence of a

proprietary information agreement.  Similarly, Clearline attempts to define the meaning of

"virtually identical" to include the methods of manufacture and material composition of Cooper

B-Line's products.  (*Id.* (citing Am. Comp. ¶ 53).)  However, the Amended Complaint is devoid

of any allegations of this nature.

Furthermore, there are insufficient facts to show that Cooper B-Line "used" any trade

secrets.  Clearline has alleged only that the products were "virtually identical," and, as stated

above, Clearline cannot subsequently define what that term means without amending its

complaint.  The Court agrees with Cooper B-Line that it cannot "draw an inference from the

similarity of the products alone that Cooper B-Line used Plaintiff's alleged trade secrets to create

its DURA-BLOK™ products."  (Cooper B-Line's Mot. at 9.)  As Clearline has failed to identify

the specific trade secret information it claims has been misappropriated in its complaint, the

Court must dismiss this claim and allow Clearline to replead with more detailed allegations.  *See Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F.Supp.2d 680, 701 (S.D. Tex. 2011).

### G.  Count 7: Breach of Contract

In Illinois, a breach of contract claim requires: (1) an offer and acceptance; (2) consideration; (3) definite and certain terms; (4) performance by the plaintiff of all required conditions; (5) breach; and (6) damages caused by the breach.  *Caremark*, 493 F.3d at 849 (citing *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC,* 845 N.E.2d 22, 30 (Ill. App. Ct. 2006), *leave to appeal denied,* 850 N.E.2d 808 (Ill. 2006).   Like its trade secrets claim, Clearline's breach of contract claim fails because Clearline has failed to plead any factual allegations showing that Cooper B-Line used Clearline's proprietary information.  Clearline has failed to identify any "technical information or financial information" that was covered by the agreement and used by Cooper B-Line.  Although Clearline indicated that Cooper B-Line began manufacturing products that were "virtually identical" to Clearline's C-PORT® products (Am. Compl. ¶ 59), the Amended Complaint identifies only similarities in appearance, such as "shape, dimensions, color, and yellow striping."   (*Id.* ¶ 12.)   Clearline will have the opportunity to replead and offer more specific allegations about its proprietary information and what is covered by the contract.

### H.  Count 8: Intentional Interference with Prospective Economic Advantage

Under Illinois law, the elements of tortuous interference with prospective economic advantage are: (1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages.  *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (citing *Fellhauer v. City of Geneva,* 568 N.E.2d 870, 877–78 (Ill.

1991).  The action must be directed at the third party.  *Id.* at 946 (citing *Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005); *see also Schuler v. Abbott Laboratories*, 639 N.E.2d 144, 147 (1993).

Clearline alleges that Cooper B-Line interfered with Clearline's business relationship with the end-users of Clearline's products, to whom Clearline provided warranty and technical support.  Clearline also believes that Cooper B-Line interfered with its sales support relationship with independent representatives who sold Clearline's products.  Cooper B-Line's alleged interfering actions include breaching its agreement with Clearline and inducing Clearline to expand its manufacturing capabilities and extend itself financially.  These actions are not directed at a third party, and accordingly, do not state a claim for intentional interference with prospective economic advantage.

Additionally, Clearline alleges that Cooper B-Line interfered with its relationships by manufacturing products that are virtually identical to Clearline's C-PORT® products, and selling these products to end-users who previously used Clearline's products.  However, Clearline fails to show how selling additional products could possibly interfere with its stated relationship with end-users, which is based solely on Clearline's provision of warranty and technical support. Clearline did not allege that it had an ongoing business relationship with these customers under which they would continue to buy Clearline's products; nor did it allege that Cooper B-Line started providing warranty and technical support to Clearline's customers for Clearline's products.  Clearline has also failed to show that the manufacturing and sales of Cooper B-Line's DURA-BLOK™ products interfered with Clearline's relationship with its sales representatives. Clearline will have the opportunity to replead with specific allegations of how Cooper B-Line interfered with its business relationships and directed its action against these third parties.

IV.     **CONCLUSION**

For the reasons discussed in this order, Defendants' Motions to Dismiss are **GRANTED IN PART**.  With respect to Cooper plc, the Court dismisses the claims of false designation of origin or sponsorship, false advertising, and trade dress infringement under Count 1, as well as Count 3, Count 6, and Count 8.  With respect to Cooper B-Line, the Court dismisses the false advertising claim in Count 1, Count 3, Count 6, Count 7, and Count 8.  Plaintiff may file an amended complaint within 20 days that cures the deficiencies identified in this Order.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 9th day of January, 2012.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE