UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLEARLINE TECHNOLOGIES LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1420 |
| | § | |
| COOPER B-LINE, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending before the Court are Cooper B-Line Inc.'s Motion for Partial Summary Judgment on Plaintiff's Fraud Claim ("Motion for Partial Summary Judgment") (Doc. No. 47) and Cooper Industries plc's Motion to Dismiss for Failure to State a Claim in Plaintiff's Second Amended Complaint ("Motion to Dismiss") (Doc. No. 59). After considering the parties' arguments and the applicable law, the Court finds that Defendants' Motions must be granted.

I.    BACKGROUND[1]

Plaintiff Clearline Technologies Ltd. ("Plaintiff" or "Clearline")[2] brings this action against Defendants Cooper B-Line, Inc. ("Cooper B-Line")[3] and Cooper Industries plc ("Cooper plc")[4] (collectively, "Defendants")[5] for claims arising out of Defendants' alleged misrepresentations and infringement of Plaintiff's trademark and trade dress. Clearline's

---

[1] The following facts are drawn from Clearline's Third Amended Complaint ("Amended Complaint") (Doc. No. 67) and are accepted as true for purposes of the Motion to Dismiss. Clearline filed this Amended Complaint after agreeing to drop certain claims made the subject of Defendants' Motions to Dismiss. However, Cooper plc stated that the allegations at issue in Cooper plc's Motion to Dismiss and Motion for Partial Summary Judgment are identical in both the Second and Third Amended Complaints. (Mot. Dismiss ¶ 2 n.1; Mot. Partial Summ. J. at 1 n.1.)

[2] Clearline is a Canadian limited company with a principal place of business in Winnipeg, Canada. (Am. Compl. ¶ 1.)

[3] Cooper B-Line is a Delaware corporation with a principal place of business in Highland, Illinois. (Id. ¶ 2.)

[4] Cooper plc is incorporated under the laws of Ireland and is believed to have a principal place of business and administrative headquarters in Houston, Texas. (Id. ¶ 4.)

[5] The parties stipulated to a dismissal of the third defendant, Cooper Technologies Company. (Doc. No. 32.)

trademark and trade dress claims arise out of its C-PORT® trademark, which is used in connection with the sale of its rooftop support products.  (Am. Compl. ¶ 9.)  Clearline filed an application to register this mark in November 2005, and it was registered on the United States Patent and Trademark Office's (USPTO) principal register on April 17, 2007.  (*Id.*)  Clearline also has acquired protectable rights in the trade dress of the distinctive C-PORT® products, which includes "their non-functional shape, dimensions, color, and yellow striping."  (*Id.* ¶ 11.)

In April 2003, Clearline entered into a Proprietary Information Agreement with Cooper B-Line, which provided that Clearline and Cooper B-Line "would evaluate and negotiate the prospect of Clearline supplying strut supports, bridge supports, and other related rooftop support products to Cooper B-Line."  (*Id.* ¶ 8.)  They also reached an oral agreement that granted Cooper B-Line exclusive rights to sell Clearline's products within the United States.  (*Id.*)  Clearline first sold its C-PORT® products to Cooper B-Line for distribution in the United States in December 2005, and over 70% of its C-PORT® sales were made to Cooper B-Line in 2006 and 2007.  (*Id.* ¶ 10.)

In July 2007, Dave Rice and Chris Peeler of Cooper B-Line represented to Clearline founder Neil Krovats that Cooper B-Line wished to enter into a contract to distribute 700,000 units of C-PORT® products over the next year; however, Clearline would need to increase its capacity first.  (*Id.* ¶ 12.)  Based on that request, Clearline increased its capacity by moving to a larger facility, and expended $10,000 in legal fees to prepare a new contract for Cooper B-Line. (*Id.*)  Without warning, Dave Rice, Dave Cibula, and Chris Peeler of Cooper B-Line informed Neil Krovats in April 2008 that, effective immediately, Cooper B-Line would no longer distribute C-PORT® products for Clearline in the United States.  (*Id.* ¶ 13.)

Clearline became aware that Defendants were selling confusingly similar roof-top support products under the trademark DURA-BLOK™ in July 2008.  (*Id.* ¶ 14.)  Cooper Technologies Company filed the application to register the trademark on December 15, 2008, and it was registered on the USPTO's principal register on September 14, 2010.  (*Id.* ¶ 15.)  The DURA-BLOK™ products have the same non-functional shape, dimensions, color, and yellow striping as the C-PORT® products.  (*Id.* ¶ 14.)  They are sold through a catalogue that is virtually identical to the catalogue developed and used by Clearline, and they bear product identifiers and specifications that are very similar to those of Clearline.  (*Id.*)  The websites of both Cooper B-Line and Cooper plc advertise the DURA-BLOK™ products.  (*Id.* ¶¶ 16–17.)  Clearline asserts that, because of Cooper plc's indirect ownership of Cooper B-Line, Cooper plc exerts control over Cooper B-Line, and such control extends to the operation of Cooper B-Line's website.  (*Id.* ¶ 19.)  Furthermore, together with former defendant Cooper Technologies, Plaintiff believes that Defendants exercise joint control over the use of the DURA-BLOK™ mark, including the advertisements and operation of the websites.  (*Id.* ¶ 20.)  Cooper B-Line and Cooper plc also continue to use Clearline's C-PORT® mark in meta-tags[6] associated with their websites, with intent to trade on the reputation and goodwill of Clearline.  (*Id.* ¶ 21.)

Clearline's Amended Complaint contains various claims for relief labeled as Counts 1–5: (1) false designation of origin or sponsorship and trade dress infringement under 15 U.S.C. § 1125(a); (2) common law trade dress infringement; (3) violations of the Illinois Deceptive Trade

---

[6] A meta-tag is "a special HTML tag that is used to store information about a Web page but is not displayed in a Web browser. . . . Many search engines use the information stored in meta tags when they index web pages."  (Am. Compl. ¶ 21 (citing TechTerms.com, http://www.techterms.com/definition/metatag).)  Therefore, Clearline urges that "[t]he Court may reasonably infer that a consumer who uses a search engine to find Clearline's C-Port products will be directed to Cooper Industries' website, where the consumer will find support blocks that appear confusingly similar to Clearline's products."  (*Id.*)

Practices Act (815 ILCS 510/1 *et seq.*)[7]; (4) trademark infringement under 15 U.S.C. § 1114(a); and (5) fraud, against Cooper B-Line only.

Defendant Cooper B-Line, Inc. ("Cooper B-Line") moves for summary judgment on Clearline's fraud claim against it. (Mot. Partial Summ. J.) Defendant Cooper Industries plc ("Cooper plc") moves to dismiss Counts 1–3 against it, to the extent the claims are based on vicarious liability. (Mot. Dismiss ¶¶ 12–14.)[8]

## II.    MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.  Legal Standard

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* "[T]he court should give credence to

---

[7] Although Clearline's Third Amended Complaint still contains this claim, the joint stipulation filed by the parties states that "Plaintiff Clearline Technologies Ltd.'s commercial disparagement claim under the Illinois DTPA, 815 ILCS 510/2(a)(8), is withdrawn as to Defendants Cooper B-Line, Inc. and Cooper Industries plc, and Plaintiff Clearline Technologies Ltd. shall amend its Second Amended Complaint to remove this claim." (Joint Stipulation on Dismissal of Certain Claims and Amendment of Complaint ("Joint Stipulation"), Doc. No. 64, ¶ 2.) Thus, it appears this claim should not have been included in the Third Amended Complaint. The Court will not dismiss this claim in this Order, and the parties may file a separate motion to resolve this issue if necessary.

[8] This is the only remaining issue in Cooper plc's Motion to Dismiss, as the parties' agreed stipulation "resolves all issues pending in the respective motions to dismiss filed by Defendants Cooper B-Line, Inc. and Cooper Industries plc, except for Defendant Cooper Industries plc's motion to dismiss Plaintiff Clearline Technologies Ltd.'s vicarious liability claims against it." (Joint Stipulation ¶ 6.)

the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court may not make credibility determinations or weigh the evidence. *Harvill v. Westward Communications*, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Additionally, any "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## B. Analysis

Under Illinois law, a plaintiff asserting a claim for fraud must show "that defendants, with the intent to induce plaintiffs to act, made a false statement of material fact which defendants knew or believed to be false. Plaintiffs must also show they justifiably relied on the statement and suffered damages resulting from that reliance." *Association Benefit Svcs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 852–53 (7th Cir. 2007) (quoting *Williams v. Chicago Osteopathic Health Sys.*, 654 N.E.2d 613, 619 (Ill. App. Ct. 1995)).

"The general standard for fraud refers to a false statement of material fact; promissory fraud, involving a false statement of intent regarding future conduct, is generally not actionable

under Illinois law unless the plaintiff also proves that the act was a part of a scheme to defraud." *Id.* at 853 (citing *Bradley Real Estate Trust v. Dolan Assocs. Ltd.,* 640 N.E.2d 9, 12-13 (Ill. App. Ct. 1994); *Gen. Elec. Credit Auto Lease v. Jankuski,* 532 N.E.2d 361, 363-64 (Ill. App. Ct. 1988)).  Such a scheme is actionable where a defendant either "(1) lied repeatedly to a single promisee, or (2) lied at least once to multiple promisees." *In re Polo Builders, Inc.*, 388 B.R. 338, 380 (Bankr. N.D. Ill. 2008) (citing *Calvin v. The Leitner Thomas Group,* No. 00–C–8055, 2003 WL 1720008, at *4 (N.D. Ill. Mar. 31, 2003)).  "The distinction between a mere promissory fraud and a scheme of promissory fraud is elusive, and has caused, to say the least, considerable uncertainty." *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995)

Clearline alleges that "Dave Rice and Chris Peeler of Cooper B-Line represented to Neil Krovats of Clearline that Cooper B-Line wished to enter into a contract to distribute 700,000 units of C-PORT® products over the next year, but that Clearline would need to increase its capacity in order for that to occur."  (Am. Compl. ¶ 45; Plaintiff Clearline Technoligies [sic] LTD.'s First Amended Answers to Defendant Cooper B-Line, Inc.'s First Set of Interrogatories ("Interrogatory Responses"), Doc. No. 47-1, at 13.)  Clearline also asserts that, on the same day and at the same location, Bob Houlhouser asked whether Clearline would be able to produce enough to meet Cooper's sales projections.  (Interrogatory Resp. at 13.)

Cooper B-Line contends that Mr. Rice's and Mr. Peeler's representations of a "*wish*[] to enter into a contract" are nothing more than statements of desire, and do not rise to the level of a promise that would satisfy the promissory fraud exception.    Additionally, Mr. Houhouser's statement was only a question rather than a promise or misrepresentation.

In its previous Memorandum and Order in this case (Doc. No. 48), the Court did not consider whether these statements were proper expressions of promises under Illinois law, as the Court raised the scheme exception *sua sponte*.  Upon closer examination of Clearline's recitation of the statements made by Cooper B-Line representatives, and with the benefit of Clearline's sworn interrogatory answers as summary judgment evidence, the Court must grant summary judgment on this claim.

As the Seventh Circuit has stated:

> A great many promises belong to the realm of puffery, bragging, "mere words," and casual bonhomie, rather than to that of serious commitment. They are not intended to and ordinarily do not induce reliance; a healthy skepticism is a better protection against being fooled by them than the costly remedies of the law. In any event it is not our proper role as a federal court in a diversity suit to read "scheme" out of Illinois law; we must give it some meaning. Our best interpretation is that promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy.

*Desnick*, 44 F.3d at 1354.  *See also Bower v. Jones,* 978 F.2d 1004, 1012 (7th Cir. 1992) (stating that "a claimant must be able to point to specific, objective manifestations of fraudulent intent— a scheme or device") (quoting *Hollymatic Corp. v. Holly Systems, Inc.,* 620 F. Supp. 1366, 1369 (N.D. Ill. 1985)).  "The disfavor that Illinois courts have expressed toward promissory fraud leads us to conclude that a claimant must allege at least explicit promises of future performance and cannot rely on implied promises to bring the action within the scheme or device exception to otherwise nonactionable promissory fraud."  *Hindley v. Seltel, Inc.*, 672 F. Supp. 1093, 1096 (N.D. Ill. 1987).

The fraud alleged here was not based on explicit promises, nor were the statements expressions of a "serious commitment."  *Desnick*, 44 F.3d at 1354.  The allegations of fraud consist of only two statements, in one day, about Clearline increasing its capacity.  These

statements are insufficient to satisfy the scheme exception.   Cooper B-Line is entitled to summary judgment on this claim.

### III.   MOTION TO DISMISS

#### A.  Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth.  *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences

favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).   A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).   "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).   The Court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Under Federal Rule of Civil Procedure 12(d), a motion to dismiss must be treated as a Rule 56 motion for summary judgment if the court considers matters outside the pleadings in deciding the motion. Before a Rule 12(b)(6) motion may be converted to a Rule 56 motion, a court must be satisfied that "the nonmoving party has . . . had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986) (citing Fed. R. Civ. P. 56(f)).

### B.  Analysis

Cooper plc moves to dismiss Counts 1–3 to the extent they are based on vicarious liability.[9]  Liability for trademark infringement extends beyond those who actually sell infringing goods.  Courts have found defendants liable on indirect liability theories, including contributory trademark infringement and vicarious liability.

Courts have imported common law concepts of agency, including vicarious liability, into the § 1125(a) analysis.  *See, e.g.*, *Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1441 n.22 (3d Cir. 1994) ("*AT&T*"); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1277 (10th Cir. 2000).    Both parties agreed, in the briefings on Cooper plc's original motion to dismiss, that the test for vicarious liability requires "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product."  *Hard Rock Cafe Licencing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007).  Courts have strictly applied the test for vicarious trademark liability based on agency principles, and, unlike vicarious copyright liability, "courts do not recognize vicarious liability in the trademark context based on ability to supervise in combination with a financial interest."  *United States v. Washington Mint, LLC*, 115 F. Supp. 2d 1089, 1106 (D. Minn. 2000).

In its previous Memorandum and Order in this case (Doc. No. 48), the Court dismissed this claim because it "cannot infer, solely on the basis that Cooper plc 'indirectly owns' Cooper B-Line, that an actual or apparent partnership exists."  (Doc. No. 48 at 15.)  A partnership is

---

[9] As the Court stated in its first Memorandum and Order (Doc. No. 48), Clearline's Amended Complaint does not specifically identify any secondary liability claims.  However, both parties have asserted throughout this case that Clearline is using vicarious liability to assert claims against Cooper plc under Counts 1–3.  Cooper plc does not challenge Clearline's allegations of direct liability in this Motion.  (*See* Resp. to Cooper plc.'s Mot. at 2.)

distinct from an ownership relationship.  *See Coach, Inc. v. Asia Pacific Trading Co.*, 676 F. Supp. 2d 914, 926 (C.D. Cal. 2009) ("Plaintiffs cite no authority—and the Court is unaware of any—to support their contention that such evidence, by itself, tends to establish that two companies who otherwise maintain separate corporate identities nevertheless share a single identity for purposes of imposing liability for trademark rights violations.")  The Court directed Clearline to provide additional allegations supporting their assertion that Defendants' relationship was like a partnership.  *See Gucci America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010) ("Though Gucci has raised a number of factual allegations that indicate that Defendants' services were crucial to a website like TheBagAddiction.com's sale of infringing goods, there is insufficient evidence to plausibly infer an actual or apparent partnership.  The vague, puffery-like references to a "partnership" between these companies and website merchants are not enough to support vicarious liability."); *Broadvision Inc. v. Gen. Elec. Co.,* No. 08 Civ. 1478(WHP), 2009 WL 1392059, at *4 (S.D.N.Y. May 5, 2009) (for copyright infringement,[10] plaintiff "must show more than just a legal relationship between the parent and the subsidiary" to "state a claim for vicarious liability against [the] parent for the actions of its subsidiary."); *see also Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. Ct. 2000) ("[S]tock ownership alone in one corporation by another is common in a parent-subsidiary relationship and does not create the relation of principal and agent.").

Clearline's Third Amended Complaint adds allegations regarding Cooper plc's relationship with Cooper B-Line and its control over the allegedly infringing products.  Clearline asserts that Cooper plc's Electronic Data Interchange ("EDI") facility allows customers to buy DURA-BLOK™ products, and its Cooper Customer Care ("C³") web portal provides real-time

---

[10] The tests for secondary trademark infringement are more difficult to satisfy than those required to find secondary copyright infringement.  *See Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 n.19 (1984); *Perfect 10*, 494 F.3d at 806.

product availability, net pricing, order status, tracking, and other services to buyers of products offered by Cooper plc subsidiaries.  (Am. Compl. ¶ 23.)  Clearline alleges that "the EDI and C[3] facilities provided by Cooper plc have the authority to bind its subsidiary Cooper B-Line in transactions with third parties."  (*Id.*)[11]  Rather than describing an "actual or apparent partnership," however, these allegations show only that Cooper plc is authorized to advertise and sell the Cooper B-Line products at issue in this case.  There is no indication that Cooper plc has any broader authority to bind Cooper B-Line in transactions with third parties, or that Cooper B-Line has such an authority with respect to Clearline.  Moreover, Clearline fails to show that Cooper plc had joint control over the products at issue, as the only allegations relate to Cooper plc's sale of Cooper B-Line products.  *See Rosetta Stone Ltd. v. Google, Inc.*, 730 F.Supp.2d 531, 550 (E.D. Va. 2010) (finding Google was not liable under a vicarious liability theory because the plaintiff failed to show that Google "controls the appearance and content" of the infringing products or the use of the marks in those products), *rev'd in part on other grounds*, 676 F.3d 144, 2012 WL 1155143 (4th Cir. Apr. 9, 2012).[12]  The additional allegations linking Cooper plc to the products at issue may provide support for Clearline's claim of direct infringement against Cooper plc, but do not support a theory of vicarious liability for the actions of Cooper B-Line.

---

[11] Clearline also attaches the Declaration of Robert D. Katz, which contains brochures describing the EDI interface and C[3] web portal.  The Court does not consider these documents in evaluating the Motion to Dismiss.  Clearline identifies no relevant information from the brochures that it did not incorporate into its Third Amended Complaint. (*See* Resp. at 3–4 & nn.5–6.)

[12] In affirming the district court's opinion on vicarious infringement, the Fourth Circuit noted that there was no evidence that "Google acts jointly with any of the advertisers to control the counterfeit ROSETTA STONE products."  *Rosetta Stone*, 2012 WL 1155143, at *16.  Control over the appearance of the advertisements or internet links was insufficient.  *Id.*

Clearline also alleges that counsel for Cooper Industries[13] responded to a letter sent to Cooper B-Line, using letterhead with the address for Cooper plc's administrative headquarters. (Am. Compl. ¶ 24.)  However, this shows nothing more than the parent-subsidiary relationship that the Court found insufficient in the previous Memorandum and Order.  Clearline has failed to add the allegations necessary to find that Defendants' relationship was an actual or apparent partnership, and thus Counts 1–3 against Cooper plc must be dismissed to the extent they are based on vicarious liability.

## IV.    CONCLUSION

Based on the foregoing, Cooper B-Line's Motion for Partial Summary Judgment is **GRANTED**.  Cooper plc's Motion to Dismiss is also **GRANTED**.


**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 9th day of May, 2012.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[13] The Court assumes that "Cooper Industries" is equivalent to "Cooper plc"; however, Clearline uses both names in the same paragraph.  (*See* Am. Compl. ¶ 24.)