UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLEARLINE TECHNOLOGIES LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1420 |
| | § | |
| COOPER B-LINE, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Clearline Technologies Ltd.'s Motion for Reconsideration of the Court's Order of May 9, 2012 ("Motion") (Doc. No. 93). After considering the parties' arguments and the applicable law, the Court finds that Plaintiff's Motion must be denied.

### I.   BACKGROUND

Plaintiff Clearline Technologies Ltd. ("Clearline")[1] brings this action against Defendant Cooper B-Line, Inc. ("Cooper B-Line")[2][3] for claims arising out of Defendants' alleged misrepresentations and infringement of Plaintiff's trademark and trade dress. Clearline's trademark and trade dress claims arise out of its C-PORT® trademark, which is used in connection with the sale of its rooftop support products. (Plaintiff's Third Amended Complaint ("Amended Complaint"), Doc. No. 67, ¶ 9.) Clearline filed an application to register this mark in November 2005, and it was registered on the United States Patent and Trademark Office's (USPTO) principal register on April 17, 2007. (*Id.*) Clearline also contends that it has acquired

---

[1] Clearline is a Canadian limited company with a principal place of business in Winnipeg, Canada. (Am. Compl. ¶ 1.)
[2] Cooper B-Line is a Delaware corporation with a principal place of business in Highland, Illinois. (*Id.* ¶ 2.)
[3] The parties agreed to the dismissal of Defendants Cooper Technologies Company (Doc. No. 32) and Cooper Industries plc (Doc. Nos. 84, 86).

1

protectable rights in the trade dress of the distinctive C-PORT® products, which includes "their non-functional shape, dimensions, color, and yellow striping." (*Id.* ¶ 11.)

In April 2003, Clearline entered into a Proprietary Information Agreement with Cooper B-Line, which provided that Clearline and Cooper B-Line "would evaluate and negotiate the prospect of Clearline supplying strut supports, bridge supports, and other related rooftop support products to Cooper B-Line." (*Id.* ¶ 8.) They also reached an oral agreement that granted Cooper B-Line exclusive rights to sell Clearline's products within the United States. (*Id.*) Clearline first sold its C-PORT® products to Cooper B-Line for distribution in the United States in December 2005, and over 70% of its C-PORT® sales were made to Cooper B-Line in 2006 and 2007. (*Id.* ¶ 10.)

In July 2007, Clearline contends that Dave Rice and Chris Peeler of Cooper B-Line represented to Clearline founder Neil Krovats that Cooper B-Line wished to enter into a contract to distribute 700,000 units of C-PORT® products over the next year; however, Clearline would need to increase its capacity first. (*Id.* ¶ 12.) Based on that request, Clearline increased its capacity by moving to a larger facility, and expended $10,000 in legal fees to prepare a new contract for Cooper B-Line. (*Id.*) Without warning, Dave Rice, Dave Cibula, and Chris Peeler of Cooper B-Line informed Neil Krovats in April 2008 that, effective immediately, Cooper B-Line would no longer distribute C-PORT® products for Clearline in the United States. (*Id.* ¶ 13.)

Clearline became aware that Cooper B-Line was selling confusingly similar rooftop support products under the trademark DURA-BLOK™ in July 2008. (*Id.* ¶ 14.) Cooper Technologies Company filed the application to register the trademark on December 15, 2008, and it was registered on the USPTO's principal register on September 14, 2010. (*Id.* ¶ 15.)

Clearline asserts that the DURA-BLOK™ products have the same non-functional shape, dimensions, color, and yellow striping as the C-PORT® products, are sold through a catalogue that is virtually identical to the catalogue developed and used by Clearline, and bear product identifiers and specifications that are very similar to those of Clearline. (*Id.* ¶ 14.) Cooper B-Line's website advertises the DURA-BLOK™ products. (*Id.* ¶¶ 16–17.) Clearline also asserts that Cooper B-Line continues to use Clearline's C-PORT® mark in meta-tags[4] associated with its websites, with intent to trade on the reputation and goodwill of Clearline. (*Id.* ¶ 21.)

Clearline's Amended Complaint contains various claims for relief labeled as Counts 1–5: (1) false designation of origin or sponsorship and trade dress infringement under 15 U.S.C. § 1125(a); (2) common law trade dress infringement; (3) violations of the Illinois Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*); (4) trademark infringement under 15 U.S.C. § 1114(a); and (5) fraud. The first four claims are still pending, although they were narrowed in the Court's last Order of July 2, 2012 (Doc. No. 108). The Court granted summary judgment on the fraud claim (Doc. No. 77), but, with this Motion, Clearline asks the Court to reconsider this ruling based on newly-discovered evidence.

## II.   LEGAL STANDARD

Because the Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004), such motions are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v.*

---

[4] A meta-tag is "a special HTML tag that is used to store information about a Web page but is not displayed in a Web browser. . . . Many search engines use the information stored in meta tags when they index web pages." (Am. Compl. ¶ 21 (citing TechTerms.com, http://www.techterms.com/definition/metatag).) Therefore, Clearline urges that "[t]he Court may reasonably infer that a consumer who uses a search engine to find Clearline's C-Port products will be directed to Cooper Industries' website, where the consumer will find support blocks that appear confusingly similar to Clearline's products." (*Id.*)

*Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when the reconsideration motion is filed within 28 days of the challenged order. *Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 2011 WL 6091807, at *5 (S.D. Tex. Dec. 7, 2011); *In re BP Shareholder Derivative Litig.*, 2011 WL 5880946, at *2 (S.D. Tex. Nov. 23, 2011). Because less than 28 days passed between the Court's decision to grant summary judgment for Defendant and Plaintiff's motion, Rule 59(e) applies in this case.

A motion to alter or amend under Rule 59(e) "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). A district court has "considerable discretion" to grant or deny a motion under Rule 59(e). *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). However, the Fifth Circuit cautions that reconsideration under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

### III.   ANALYSIS

#### A.  Additional Evidence

The additional evidence presented by Clearline in support of its Motion may be summarized as follows:

- **Timing of Cooper B-Line's Replacement of Clearline:** Cooper B-Line employees testified that they had been in contact with another company that would replace Clearline and make Cooper B-Line's own product since 2007, many months before Cooper B-Line informed Neil Krovats in April 2008 that Cooper B-Line would no longer distribute C-PORT® products. (Price Depo., Doc. No. 93-1, at 42 (APP 000004) (communications with the manufacturing company began around December 2007); Rice Depo., Doc. No. 93-1, at 112–13, 117–18, 118–20 (APP 000011–13) (Cooper B-Line began to look for another manufacturing company in about April

2007); Peeler Depo., Doc. No. 93-1, at 123, 127 (APP 000025–26) (Cooper B-Line began finding another manufacturer in the general time frame of May or June 2007).)

- **Las Vegas Dinner:** Cooper B-Line employees went to dinner with Mr. Krovats in Las Vegas in March 2008. Before the dinner, it was revealed to Alan Price, a regional sales manager for Cooper B-Line (Price Depo. at 45 (APP 000005)), that "this would be the last meeting we [would] have with Mr. Krovats where we would be buying product from Clearline, that we were going to be moving to another company for supply of our rooftop supports." (*Id.* at 40 (APP 000003).) He was told that Mr. Krovats was unaware of the change, and would not be made aware of it until April of 2008. (*Id.* at 42 (APP 000004).) At the meeting, Mr. Krovats indicated that he was spending millions of dollars "to answer some of the supply issues that were a constant complaint from all of us that were attempting to sell the product." (*Id.* at 44 (APP 000004).) This was a five- to ten-minute portion of the conversation. (*Id.* at 43 (APP 000004).) Nobody informed Mr. Krovats at the meeting that Cooper B-Line was planning to stop selling Clearline's products. (*Id.* at 44 (APP 000004).)
- **Conversations about Long-Term Agreement:** Dave Rice, a sourcing manager for Cooper B-Line (Rice Depo. at 111 (APP 000011)), testified that he did not have any conversation with Clearline about their continued supply of products to Cooper B-Line; rather, "it was status quo, status quo." (*Id.* at 171 (APP 000015).) He recalled that Neil Krovats called in September 2007 to "express[] interest to sign the long-term agreement," but Mr. Rice "reminded him of the two sticking points"—a marketing issue and a liability issue. (*Id.* at 171–72 (APP 000015).)

Clearline presents additional evidence as well, but does not explain how this evidence is relevant to the fraud claim or this Motion for Reconsideration. (*See* Mot. at 4 (discussing 7,346 pages of documents delivered on February 2, 2012 and 27,352 pages delivered on February 14, 2012); Mot. at 5 (discussing the incorporation of C-PORT® product numbers and code into the DURA-BLOK™ webpage).)

### B. Whether the Evidence is "Newly Discovered"

A Rule 59(e) motion should not be granted based on newly-discovered evidence unless the facts are (1) of such a nature that they would probably change the outcome; (2) actually newly discovered and could not have been discovered earlier by proper diligence; and (3) not merely cumulative or impeaching. *Infusion Resources, Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003) (citing *English v. Mattson*, 214 F.2d 406, 409 (5th Cir. 1954)). The Fifth Circuit has explained that the unexcused failure to present evidence available at the time of

summary judgment is a valid basis for denying a motion to reconsider. *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991). *See also Knight v. Kellogg Brown & Root, Inc.*, 333 Fed. Appx. 1, 8 (5th Cir. 2009) ("[T]he plaintiffs fail to adequately explain why they did not obtain these documents before summary judgment, and '[a]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration.'" (quoting *ICEE Distribs. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847-48 (5th Cir. 2006))).

### 1. Actually Newly Discovered

Clearline received every document and took every deposition upon which it relied before the Court's Order was entered on May 9, 2012. At no point, either in its Response to the Motion for Summary Judgment or when it allegedly discovered these facts, did Clearline ask the Court to defer consideration or deny the motion because of ongoing discovery, or for leave to amend its response.[5] *See* Fed R. Civ. P. 56(d); *see also Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009); *Molina v. Equistar Chemicals LP*, 261 Fed. Appx. 729, 734 (5th Cir. 2008.

Clearline states that it did not present the evidence earlier because it was preparing its evidence to be filed with its response to Cooper B-Line's second motion for summary judgment. However, the fact that this motion was pending did not moot the first motion. Clearline knew the first motion for summary judgment was pending, and should have moved for an extension of time or otherwise alerted the Court that it wished to present additional evidence to support its fraud claim. Thus, the Court finds that the evidence was not newly discovered.

---

[5] The Court understands Clearline's contention that discovery was delayed because of substitution of counsel and the unexpected death of the owner of the firm that employed Clearline's counsel at the start of this case. However, Clearline could have brought these discovery issues to the Court's attention earlier by asking for an extension of time or submitting a Rule 56(d) affidavit.

### 2. Cumulative or Impeaching

Moreover, the facts presented in the Motion for reconsideration were previously available to Clearline in other forms even before Clearline filed its response to the motion for summary judgment. On January 18, 2012, Clearline obtained documents from RB Rubber, the manufacturer of DURA-BLOK™ products, which show that Cooper B-Line was communicating about the products with RB Rubber in April 2007, and sent drawings and samples of the C-PORT® products in July 2007. (App. A-5, Doc. No. 100 (DASH001485, 1454).) Furthermore, any details about communications between Mr. Krovats and Cooper B-Line employees at the Las Vegas dinner or over email about the contract should have been known to Mr. Krovats, and thus Clearline. The evidence was thus cumulative of other evidence available to Clearline.

### 3. Effect on the Outcome

In any event, the new evidence does not affect the Court's May 9, 2012 Order. In that Order, the Court noted that Clearline's fraud claim was based on two statements, on the same day in July 2007 and at the same location. First, "Dave Rice and Chris Peeler of Cooper B-Line represented to Neil Krovats of Clearline that Cooper B-Line wished to enter into a contract to distribute 700,000 units of C-PORT® products over the next year, but that Clearline would need to increase its capacity in order for that to occur." (Am. Compl. ¶ 45; Plaintiff Clearline Technoligies [sic] LTD.'s First Amended Answers to Defendant Cooper B-Line, Inc.'s First Set of Interrogatories ("Interrogatory Responses"), Doc. No. 47-1, at 13.) Second, Bob Houlhouser asked whether Clearline would be able to produce enough to meet Cooper's sales projections. (Interrogatory Resp. at 13.)

The Court found:

> The fraud alleged here was not based on explicit promises, nor were the statements expressions of a serious commitment. The allegations of fraud consist

>of only two statements, in one day, about Clearline increasing its capacity. These statements are insufficient to satisfy the scheme exception.

(Memorandum and Order, Doc. No. 77, at 7–8 (internal quotations and citation omitted).)  Mr. Rice's and Mr. Peeler's representations of a "*wish*[] to enter into a contract" are nothing more than statements of desire, and do not rise to the level of a promise that would satisfy the promissory fraud exception.  Mr. Houhouser's statement was only a question rather than a promise or misrepresentation.  As the Court noted in its Order, "[t]he disfavor that Illinois courts have expressed toward promissory fraud leads us to conclude that a claimant must allege at least explicit promises of future performance and cannot rely on implied promises to bring the action within the scheme or device exception to otherwise nonactionable promissory fraud." *Hindley v. Seltel, Inc.*, 672 F. Supp. 1093, 1096 (N.D. Ill. 1987).

Clearline has provided no new evidence of explicit promises, either from the testimony of Cooper B-Line employees or from sworn statements made by Mr. Krovats based on his recollection of these conversations.  Clearline presents no additional evidence or testimony about the statements by Mr. Rice and Mr. Peeler in July 2007 to show that they made any promise more concrete than a "wish" to enter into a contract.

Additionally, the depositions cited show that Cooper B-Line employees did not admit to making any representations to Mr. Krovats about whether the relationship would continue in the future.  At the Las Vegas dinner, Cooper B-Line employees allowed him to talk about his plans to increase production, but there is no indication that they made any representations about continuing to do business with Clearline.  In the conversations between Mr. Krovats and Mr. Rice about the long-term contract, there is no indication that Mr. Rice represented that Cooper B-Line was interested in signing the contract; rather, he just reminded Mr. Krovats of two sticking points.

Clearline also states that "Cooper represented to Clearline that the status quo would be maintained" (Mot. at 8), and "that the 'status quo' of a continued exclusive distributorship business relationship with Clearline would continue" (*id.* at 14). However, the cited portion of the deposition clearly indicates no such "representation." Rather, Clearline asked Mr. Rice if he had "*any* conversation with [Clearline] about their continued supply to you, you're going to keep buying from them, that the relationship was going to keep going?" (Rice Depo. at 170 (APP 000015).) Mr. Rice responded, "*No*. I mean, it was status quo, status quo." (*Id.* at 171 (APP 000015) (emphasis added).)

Accordingly, Clearline still has failed to provide this Court with any explicit promises or misstatements from Cooper B-Line, but rather has provided evidence that shows only that Cooper B-Line was concealing its plans to manufacture its own product from Clearline. Clearline cites no authority to support the idea that Cooper B-Line had an affirmative duty to share these plans with Clearline earlier.[6]

## IV. CONCLUSION

Based on the foregoing, Clearline's Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 20th day of July, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[6] The cases relied upon by Clearline are inapposite. For example, In *P.H. International Trading Co. v. Christia Confezioni S.p.A.*, No. 04-C-0903, 2005 WL 2420377 (N.D. Ill. Sept. 29, 2005), Defendant had made an explicit promise "to use Plaintiff as its exclusive distributor." *Id.* at *8. Moreover, the court was evaluating a motion to dismiss, and this motion was analyzed under on the pre-*Twombly* and *Iqbal* standard requiring a showing that "no set of facts can be proved under the pleadings which will entitle the plaintiff the recovery" to dismiss the claim. *Id.* at *7 (citations omitted).