UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CLEARLINE TECHNOLOGIES LTD.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:11-cv-1420** |
| | § | |
| **COOPER B-LINE, INC., et al.,** | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Clearline Technologies Ltd.'s ("Clearline") Renewed Motion for Supplemental Actual and Enhanced Damages & Motion for Award of Interest. (Doc. No. 196.) Upon considering the Motion, all responses thereto, the applicable law, the evidence adduced, and oral argument, the Court is not persuaded that awards of supplemental or enhanced damages are appropriate, given the likelihood that the jury included an award for future damages in its verdict. Consequently, Clearline's Motion must be **DENIED** as it relates to supplemental and enhanced damages.

### I.     BACKGROUND

This case involves claims of trade dress and trademark infringement. Clearline contends that Defendant Cooper B-Line, Incorporated's ("Cooper") DURA-BLOK™ rooftop support products infringe on its C-PORT® products. At trial, Clearline argued that Cooper infringed on two aspects of its trade dress: a yellow reflective stripe and a yellow and black color scheme. It also argued that Cooper infringed on Clearline's C-PORT® trademark by using it in the meta-tags on Cooper's website and in a tradeshow catalog.

1

The jury returned a split verdict. (Doc. No. 151.) With regard to Clearline's trade dress claims, the jury determined that the use of reflective yellow striping was not non-functional, and did not create a likelihood of confusion as to the source, affiliation, or sponsorship of Cooper's product. Those findings do not constitute trade dress infringement. Jury Verdict at 2, 4. (Doc. No. 151.) The jury also determined that the yellow and black color scheme was non-functional, that it had acquired a secondary meaning, and that it did create a likelihood of confusion as to the source, affiliation, or sponsorship of Cooper's product. *Id.* Those findings do constitute a finding of trade dress infringement. Moreover, the jury concluded that Cooper's trade dress infringement was willful. *Id.* at 5. The jury awarded Clearline $2,660,000 in lost profits, and $3,200,000 in profit disgorgement damages for Cooper's trade dress infringement. *Id.* at 6-7.

As to Clearline's trademark infringement claims, the jury found that Cooper's use of the C-PORT® trademark in meta-tags on its website did not create a likelihood of confusion as to the source, affiliation, or sponsorship of Cooper's product. *Id.* at 8. It found that Cooper's use of the C-PORT® trademark in a tradeshow catalog, however, did create a likelihood of confusion as to the source, affiliation, or sponsorship of Cooper's product. This conclusion was sufficient to find trademark infringement, as none of the other elements of a trademark infringement claim were contested. *Id.* Nonetheless, the jury decided that this trademark infringement did not entitle Clearline to any amount of lost profits or profit disgorgement. *Id.* at 10-11.

In addition, at trial, Clearline presented the jury with detailed testimony and documentary evidence from its damages expert, Dr. Lawrence Prescott. Dr. Prescott spoke not only to damages for the past infringement described above, but also to future damages in an amount that would compensate Clearline for Cooper's continued infringement of its trade dress. The jury's verdict, however, did not specifically delineate an award of future damages.

The parties filed a raft of post-trial motions, all of which the Court previously resolved. *See* Mem. & Order, June 3, 2013. (Doc. No. 193.) Clearline sought supplemental damages for Cooper's continued sales of DURA-BLOKs™ after the jury's verdict.[1] The Court declined to award supplemental damages for Cooper's post-verdict infringement at that time, though it did determine that such damages would be appropriate. *Id.* at 26-29. The Court encouraged the parties to come to an agreement regarding supplemental damages, but allowed Clearline to re-file a motion seeking supplemental damages if they could not. The parties were unable to reach an agreement; the pending motion followed. In it, not only does Clearline seek supplemental and enhanced damages based on disgorgement of Cooper's profits, it seeks them based on its own lost profits as well.

In addition to supplemental and enhanced damages, which are the subject of this Memorandum and Order, Clearline's motion includes a request for pre-judgment interest. In its June 3, 2013 Memorandum and Order, the Court determined that an award of pre-judgment interest is appropriate. *Id.* at 29-33. Specifically, the Court awarded pre-judgment interest "in the amount of the average prime rate from the time Clearline's infringement claims accrued, in May 2008, until the date judgment is entered." *Id.* at 32. The Court also specified that pre-judgment interest would be compounded annually. *Id.* at 33. The Court requested that the parties "submit an agreed proposal detailing the prime rate during the relevant time period and calculating the dollar amount of pre-judgment interest Clearline is owed based on the foregoing." *Id.* While the parties were able to reach an agreement about the proper interest rate to be used – 3.43% – and the date upon which interest calculations should begin – May 15, 2008 – they were not able to

---

[1] There is no dispute that Cooper continued to sell infringing DURA-BLOKs™ following the jury's verdict.

agree upon a method of calculation. Clearline therefore includes the question of interest calculation in its Motion, alongside the supplemental and enhanced damages issues.

At a hearing on December 20, 2013, the Court took up the question of pre-judgment interest and ruled that it would use a method of calculating pre-judgment interest that took into account the fact that the infringing sales were made over a period of time. That ruling left only the pending supplemental and enhanced damages issues. The Court held an evidentiary hearing concerning these issues on March 18, 2014.

## II. LEGAL STANDARDS

The Lanham Act, 15 U.S.C. §§ 1051-1141n, governs damages awards in trademark and trade dress cases. As relevant here, in the case of infringement, the Act provides that

> the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum . . . shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a). A district court has "considerable discretion in fashioning an appropriate remedy for infringement" under the Lanham Act. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991).

Noting the dearth of Lanham Act case law addressing supplemental damages for continued, post-verdict infringement, the Court turned to patent law as an illustrative analogue. Mem. & Order at 26-29, June 3, 2013. (Doc. No. 193.) In that Memorandum and Order, the Court determined that an award of supplemental damages was appropriate, but declined to calculate the precise amount. The Court incorporates that discussion of supplemental damages

4

here, but the Court need not repeat it because it has determined that the law of enhanced damages controls this matter.

Regarding enhanced damages, the Lanham Act provides that "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. . . . Such sum . . . shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). Enhancement is thus appropriate where the damages awarded fail to adequately compensate a plaintiff. *Taco Cabana*, 932 F.2d at 1127. The Fifth Circuit has recognized that "[i]t is anomalous to say that an enhancement of damages, which implies an award exceeding the amount found 'compensatory,' must be 'compensatory' and not 'punitive.'" *Id.* Nevertheless, it has explained that one appropriate use of the judicial power to enhance compensatory damages would be to "provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct." *Id.* While "[a]n enhancement of damages may be based on a finding of willful infringement," it, again, "cannot be punitive." *Id.*; *see also Champion Cooler Corp. v. Dial Mfg.*, No. 3:09–CV–1498–D, 2010 WL 1644193, at *3 (N.D. Tex. April 22, 2010) (noting that "evidence of willfulness alone, without proof that damages are not completely compensatory, does not entitle a plaintiff to enhanced damages.").

### III.   ANALYSIS

Because the Court is unable to determine the precise nature or extent of the jury's future damages award, it also cannot determine whether the jury's award failed adequately to compensate Clearline for its future damages. Consequently, if the Court were to enhance the jury's award of future damages as Clearline requests, it risks both invading and trampling upon

the jury's verdict, and making a punitive award in contravention of the Lanham Act's express prohibition. Therefore, the Court declines to do so.

There can be no question that the jury was well-equipped to make a future damages award.[2] At trial, Clearline presented detailed and highly contested evidence concerning future damages to the jury. Trial Tr. 986:23-995:25; Pl.'s Ex. 227. Its damages expert, Dr. Prescott, explained that, by "future damages," he meant "[d]amages ongoing from time of trial, if Cooper continues to infringe Clearline's trade dress," and that such damages are intended to "compensate Clearline for Cooper's use of Clearline's intellectual property, the trade dress." Trial Tr. 987:1-6. Under very specific questioning from Clearline's counsel, Dr. Prescott explained further:

> Q. So it is something – when I think of somebody using something for a fee, I think in terms of a license.
> A. That's correct.
> Q. Is future damages like a license?
> A. It is like a license. And the amount would be effectively a royalty that would be built into the license.
> Q. Okay. What do you mean by "royalty"?
> A. It's – for each unit it would be an amount paid to – from Cooper to Clearline. . . .
> Q. Dr. Prescott, did you conduct a calculation to make a determination, with respect to an opinion, as to an amount of future damages that should be awarded for the time period of September 30, 2012, *into the future*?
> A. I did.

Trial Tr. 987:7-16, 988:12-16 (emphasis added). Dr. Prescott gave the jury eighteen options for future damages,[3] based on three different royalty rate assumptions (eight, ten, and twelve

---

[2] Neither of the parties has challenged the evidentiary basis for an award of future damages. Accordingly, the Court does not address this issue.

[3] In his testimony, Dr. Prescott claims that he gave the jury twenty-four different future damages award options. Trial Tr. 995:18-21. However, with three royalty rate assumptions, three time period assumptions, and two growth assumptions, there could have been only eighteen such award options presented to the jury.

6

percent), three different time period assumptions (five, seven, and ten years), and two different growth assumptions (five and eight percent). Trial Tr. 993:1-995:15; Pl.'s Ex. 227. Those options ranged from $2,214,816 to $6,566,549. Pl.'s Ex. 227. Finally, when Clearline's counsel asked, "[s]o, in your expert opinion, what amount of future damages would be reasonable to award," Dr. Prescott in no uncertain terms told the jury that an award of damages adequate to compensate Clearline for future infringement would be $4 million. Trial Tr. 995:16-25. Cooper's counsel proceeded to cross-examine Dr. Prescott on his future damages opinions, and Cooper explicitly addressed those opinions with testimony from its own damages expert, Brent K. Bersin. Trial Tr. 1220:1-1221:15, 1224:15-1225:9.

Not only was the jury equipped to award future damages, it was empowered to do so as well. Before sending it to deliberate, the Court instructed the jury as follows:

> The damages that you award must be fair compensation for all of Clearline's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a party. You should not award compensatory damages for speculative injuries, but only for those injuries which the parties actually suffered or [are] reasonably likely to suffer *in the future.*

Trial Tr. 1409:5-12 (emphasis added). In following these instructions, the jury was entitled to weigh and credit, or discount, as it found appropriate, the competing future damages analyses offered by the parties and their experts, as well as any other evidence it determined was relevant. *See Pipitone v. Biomatrix*, 288 F.3d 239, 250 (5th Cir. 2002) (holding that jury was entitled to consider expert's testimony and the predicate facts, and determine for itself how much weight to accord the expert's opinion); *Grenada Steel Indus., Inc. v. Ala. Oxygen Co., Inc.*, 695 F.2d 883, 889 (5th Cir. 1983) (jury was entitled to credit or discredit one or more expert opinions).

In making its case for supplemental damages, Clearline argues that the jury verdict form had no specific question for future damages, so there can be no certainty that the jury even

awarded future damages. Further, it argues, the Court's jury instruction concerning future damages relates only to lost profits; Clearline argues that the Court's instructions regarding profit disgorgement did not discuss future damages at all. In response, Cooper refers to the above testimony and the Court's jury instructions and argues that the jury is to be presumed to have followed the Court's instructions. Thus, Cooper contends, the Court should assume that the jury considered future damages, and may have awarded future damages as it believed necessary to fully compensate Clearline for future infringement. Consequently, Cooper argues, a supplemental damages award would amount to an inappropriate tinkering with facts found by the jury and would possibly be duplicative.

The Court believes that Cooper has the better argument. While it agrees with Clearline that it is not *absolutely* certain that the jury awarded future damages, the Court is reasonably satisfied that the evidence presented at trial supports the conclusion that the jury made some award of future damages, even if it is was $0. Therefore, because the jury already made an award of future damages, the Court believes the question of compensating Clearline for Cooper's continued post-verdict infringement is not properly one of supplemental damages, but rather one of enhanced damages – that is, whether the future damages award is sufficiently compensatory and should be enhanced. However, because the jury's verdict is unclear as to the amount it awarded for future damages, the Court is left without any basis for evaluation. The Court will not risk invading the jury's province and trampling upon its verdict by awarding an amount the jury not only already considered, but may have already awarded.

Clearline is correct that the Jury Instructions mention future damages only in the context of Clearline's lost profits, and not disgorgement of Cooper's profits. The problems identified by the Court remain, however. The Court cannot determine whether the jury awarded an adequately

compensatory sum. Precisely because it may have, if the Court were to enhance the jury's future damages award according to Clearline's profit disgorgement calculation, the Court risks not only nullifying the jury's verdict, but, with a possibly extra-compensatory damages award, also violating the Lanham Act's prohibition on punitive damages, not to mention making a duplicative award.

Clearline has no grounds for complaint. It worked diligently to push the jury to award future damages at trial. Nevertheless, it did not also ask for a specific jury question on future damages. *See* Pl.'s Proposed Jury Instructions and Special Verdict Form. (Doc. No. 128-8.) Clearline cannot press for the jury to award future damages, allow it do so ambiguously without objection, and then object that the Court unjustly denied supplemental and enhanced damages because the jury's future damages award is unclear. This is all the more true because, at the Court's evidentiary hearing regarding supplemental and enhanced damages, Clearline did not put on a single witness or offer any materials to explain how to account for this future damages problem in either a supplemental or enhanced damages award. Instead, Dr. Prescott, Clearline's own damages expert, repeatedly testified that the jury's verdict is impenetrable.

The jury was instructed to award future damages in an amount necessary to compensate Clearline adequately for future infringement. The jury may have made such a compensatory award, and the Court is loath to second-guess the jury's determination of adequate compensation. Even if it were to do so, though, because of the opacity of the jury's verdict, the Court lacks any basis to determine whether or not the jury's award is fully compensatory. Consequently, the Court must deny Clearline's request for supplemental and enhanced damages.

As the Court concludes that it cannot grant Clearline supplemental and enhanced damages because the jury may have already adequately compensated it with future damages, the

Court casts doubt on its previous ruling that a supplemental, post-verdict damages award is appropriate in this case. The Court does not retreat from its determination that Clearline should be compensated for Cooper's post-verdict infringement. Rather, the Court believes that the jury may have already done so.

Further, if the Court will not grant supplemental and enhanced damages because doing so risks trampling upon what the jury found to be adequate compensation for future infringement, granting a permanent injunction would also be ill-advised. This is because, as the Federal Circuit reasoned in *Innogenetics, N.V. v. Abbott Laboratories*, when a party "requests and receives . . . compensation [for future infringement], it cannot be heard to complain that it will be irreparably harmed by future sales." 512 F.3d 1363, 1380 (Fed. Cir. 2008). The Court agrees that this is particularly true when a party affirmatively seeks such compensation. It is well settled, of course, that, without irreparable harm, a permanent injunction is inappropriate. *See Flowserve Corp. v. Hallmark Pump Co.*, No. 4:09-cv-0675, 2011 WL 1527951, at *9 (S.D. Tex. Apr. 20, 2011) (for a permanent injunction under the Lanham Act, a party must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.") (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006)).

Therefore, the Court's conclusion regarding future damages also requires reconsideration of its award of a permanent injunction preventing Cooper from using the black and yellow color scheme it has been using on its DURA-BLOKs™, and any other black and yellow color scheme that would be confusingly similar to the black and yellow color scheme Clearline has been using

on its C-PORTs®. Again, Clearline itself precipitated such a determination in seeking future damages in the way that it did – it is difficult for the Court to understand how Clearline can, on the one hand, argue for a sum that will adequately compensate it for future infringement, and then, on the other, argue that the harm of future infringement is irreparable.

Accordingly, the Court must vacate the rulings in its June 3, 2013 Memorandum and Order in this case relating to supplemental damages and the permanent injunction, and dissolve the permanent injunction against Cooper. Such a revision of a prior Order is proper under Federal Rule of Civil Procedure 54(b), which provides that an order adjudicating fewer than all of the claims among all the parties "may be revised at any time" before the entry of a final judgment. Under Rule 54(b), a district court has "the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. Unit A 1981).

### IV.     CONCLUSION

For the above reasons, Clearline's motion is **DENIED** insofar as it seeks supplemental and enhanced damages. The Court also **VACATES** the rulings in Parts IV and VI of its June 3, 2013 Memorandum and Order (Doc. No. 193) and **DISSOLVES** the permanent injunction against Cooper granted therein. The Court will enter a final judgment as appropriate.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the twenty-eighth day of March, 2014.

_/s/ Keith P. Ellison_

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

11